**RELIABLE TRANSFER CO., INC., Plaintiff-Appellee and Cross-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellant and Cross-Appellee.**

**Nos. 540, 803, Dockets 73–1513, 73–2325.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 19, 1974.

Decided May 23, 1974.

Herbert B. Halberg, New York City (Krisel, Beck & Halberg, New York City, on the brief), for plaintiff-appellee and cross-appellant Reliable Transfer Co., Inc.

Janis G. Schulmeisters, Atty., Admir. & Ship. Section, Dept. of Justice, New York City (Harlington Wood, Jr., Asst. Atty. Gen., Washington, D. C., Robert A. Morse, U. S. Atty., Brooklyn, N. Y., and Gilbert S. Fleischer, Atty. in Charge, Admir. & Ship. Section, Dept. of Justice, New York City, on the brief), for defendant-appellant and cross-appellee United States.

Before LUMBARD, FRIENDLY and TIMBERS, Circuit Judges.

PER CURIAM:

This case arises from a little saga of the sea—this time involving a coastal tanker, the Mary A. Whalen, that got lost in the waters just outside New York harbor on a clear night in December 1968 when the seas were rough, the tide was running strong and a breakwater light maintained by the Coast Guard was out. The tanker ended up stranded on a sand bar off Rockaway Point.

The owner of the tanker, Reliable Transfer Co., Inc., invoking the admiralty and maritime jurisdiction of the district court under the Suits In Admiralty Act, 46 U.S.C. § 741 et seq. (1970), sued the United States to recover damages sustained by the stranded tanker.

After a bench trial in the Eastern District of New York before Orrin G. Judd, *District Judge*, the court found that the stranding of the tanker was caused 25% by the negligence of the Coast Guard in its failure properly to maintain the breakwater light and 75% by the negligence of the vessel in making a U-turn in a dangerous channel when its captain knew that the breakwater light was not operating. The court held under controlling law that each party should bear half of the damages.

We hold that the court was not clearly erroneous in finding that the negligence

**1038**

of both parties, in the proportions stated, caused the stranding.

The vessel's claim that it was not at fault borders on the frivolous; under circumstances requiring extreme care in navigation and with adequate navigation instruments available, the captain simply got lost and was considerably further north than he thought when he made a U-turn in a dangerous channel knowing that the breakwater light was not operating.

■ We also reject the government's claim that its failure properly to maintain the breakwater light was merely a condition rather than a cause of the stranding. Surely it was a but-for cause. The court found, as common sense would dictate, that if the breakwater light had been operating the captain would not have stranded the vessel. Viewing the government's claim as essentially a variation of the last clear chance doctrine— given the captain's knowledge of the dangerous situation, he should have been able to avoid the stranding—we refuse to apply here the doctrine of last clear chance which has been given only limited application in admiralty. See Petition Of Kinsman Transit Co., 338 F.2d 708, 719–21 (2 Cir. 1964), cert. denied, 380 U.S. 944 (1965).

■■ We also decline the invitation to seize upon this case as a vehicle to overrule the equal division of property damage rule that has long applied in admiralty cases where both parties are at fault. Weyerhaeuser Steamship Co. v. United States, 372 U.S. 597, 603 (1963); The Max Morris, 137 U.S. 1, 13 (1890); North Star, 106 U.S. 17 (1882). And we particularly see no basis either in authority or in principle for saying that the rule should apply in collision cases but not in stranding cases; for it was so applied in Atlee v. Northwestern Union Packet Co., 88 U.S. (21 Wall.) 389 (1874). We of course are mindful of the criticism of the equal division of damages rule and we recognize the force of the argument that in this type of case division of damages in proportion to the degree of fault may be more equitable. Ulster Oil Transport Corp. v. The Matton No. 20, 210 F.2d 106, 110 (2 Cir. 1954) (L. Hand, J., dissenting); Black & Gilmore, Admiralty § 7–20, at 440 (1957). But we also are not insensitive to the considerations rooted in strong public policy that have impelled our Court as one of the inferior federal courts for many years to abstain from attempting to change the law in areas such as this, preferring to leave doctrinal development to the Supreme Court or to await appropriate action by Congress. In re Adams' Petition, 237 F.2d 884, 887 (2 Cir. 1956); cf. Benazet v. Atlantic Coast Line Railroad Co., 442 F.2d 694, 697 (2 Cir. 1971), aff'd, 406 U.S. 340 (1972); McLaughlin v. Trelleborgs Augfartygs A/B, 408 F.2d 1334, 1338 (2 Cir.), cert. denied, 395 U.S. 946 (1969). As Judge Hincks so aptly put it in In re Adams' Petition, *supra*, 237 F.2d at 887:

"[T]he rule of equal division of property damage is so well established in this country that it would create intolerable confusion were a court of intermediate jurisdiction such as ours to deviate from it. We shall therefore continue to apply the rule until there shall be authoritative sanction for departure therefrom."

We agree.

We affirm substantially for the reasons set forth in the well reasoned opinion of Judge Judd below.

Affirmed.