Hardy S. JONES

v.

**TEXACO PANAMA, INC. and the SS TEXACO OHIO.**

Civ. A. No. 75–873.

United States District Court,
E. D. Louisiana.

March 30, 1977.

Hugh Ramsey Straub, Terriberry, Carroll, Yancey & Farrell, New Orleans, La., for plaintiff.

John J. Broders, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for defendant.

JACK M. GORDON, District Judge.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This civil action arises out of the collision between the trawler LITTLE CHIP and the oil tanker SS TEXACO OHIO. Trial of the case was held on October 8, 1976, after which the parties were afforded the opportunity to present additional briefs. The Court then took the matter under submission.

Based on the evidence adduced at trial and the law applicable to the case, the Court now makes the following FINDINGS OF FACT AND CONCLUSIONS OF LAW.

### FINDINGS OF FACT

1.

The F/V LITTLE CHIP is a 63-foot long shrimp trawler of 93.5 gross tons. She was powered by a single diesel engine of ap-

proximately 400 horsepower and had a top speed of 10 to 12 knots. The vessel was also equipped with both UHF and CB radios and radar. At all relevant times, the LITTLE SHIP was owned and operated by Hardy S. Jones.

**2.**

The S/S TEXACO OHIO is a tank vessel measuring 619 feet in length and 83.5 feet in breadth. The vessel, which is owned and operated by Texaco Panama; Inc., was carrying a cargo of oil on the date of the collision. On that date, the vessel was in the vicinity of Southwest Pass, proceeding up the Mississippi River to Convent, Louisiana, to discharge its cargo of oil.

**3.**

On November 25, 1974, after trawling in the Gulf of Mexico, the LITTLE CHIP was proceeding from the west to Southwest Pass in order to avoid bad weather in the Gulf. At that time, Captain Emmett A. Clayton was at the helm of the LITTLE CHIP.

**4.**

The LITTLE CHIP entered the channel approximately midway between the sea buoy and the No. 1 bell buoy, marking the entrance of the Alpha Range of the channel. At approximately the same time, the TEXACO OHIO was taking aboard a pilot, Timothy Flynn, to navigate the vessel in Southwest Pass. Flynn was taken to the TEXACO OHIO aboard the pilot boat, DELTA, which was commanded by Claude L. Watts.

**5.**

While approaching the Southwest Pass channel, Captain Clayton of the LITTLE CHIP sighted the TEXACO OHIO in the vicinity of the sea buoy. At this time, the TEXACO OHIO was apparently in the process of taking on her pilot. Upon boarding the TEXACO OHIO, her pilot, Flynn, directed the vessel's course in a northerly direction, with her engines on full ahead,

thereby giving the TEXACO OHIO an approximate speed of 11 knots.

**6.**

After the LITTLE CHIP entered the mouth of Southwest Pass by turning to port, she proceeded up the Alpha range and turned to her starboard upon entering the Beta range of the channel. The vessel then straightened up in the channel and held close to the west bank of the channel while proceeding in a northeasterly direction.

**7.**

At the same time, the TEXACO OHIO approached the East Jetty of the Pass and was beginning to overtake the LITTLE CHIP. The TEXACO OHIO was proceeding approximately 125 feet east of the centerline of the channel. At this time, as the TEXACO OHIO was overtaking the LITTLE CHIP, the trawler began crossing the channel by heading to starboard, thereby closing in on the TEXACO OHIO's port bow. Captain Flynn attempted to raise the LITTLE CHIP on UHF Channels 13 and 16, but received no response. In addition, he called the pilot boat, DELTA, and requested that it range ahead and alert the trawler to the TEXACO OHIO's presence. It should be noted that immediately following the accident, Flynn was able to reach the trawler via Channel 16.

**8.**

Captain Flynn's testimony is corroborated by that of Claude L. Watts, master of the pilot boat, DELTA. Watts stated in his deposition that as he was following the TEXACO OHIO, he saw a shrimp trawler, the LITTLE CHIP, coming from the west to the east side of the channel. In other words, the trawler was coming in from the west at an angle and thus closing in on the TEXACO OHIO's port. Watts testified that he went alongside the LITTLE CHIP, blew his whistle and pointed toward the TEXACO OHIO. The LITTLE CHIP, either ignoring Watts' warnings or not hearing them, continued to head over to the eastward side of the channel. This is despite the customary river practice that shal-

low-draft vessels should stay on the westernmost side of the channel in Southwest Pass.

#### 9.

As the LITTLE CHIP and the TEXACO OHIO closed in on each other, Captain Flynn ordered starboard rudder on the TEXACO OHIO and reversed his engines. Nevertheless, the two vessels collided, the port side of the TEXACO OHIO striking the starboard outrigger of the LITTLE CHIP.

#### 10.

As the TEXACO OHIO and the LITTLE CHIP approached each other and a collision seemed imminent, Captain Flynn testified that he gave one blast of his whistle of an eight- to ten-second duration. Captain Flynn intended the whistle blast to act as a danger signal and to attract the attention of the LITTLE CHIP as it was crossing over the TEXACO OHIO's path. Nonetheless, Flynn stated that according to custom and practice on the river, a single whistle blast usually signifies that one vessel is overtaking another. Before turning starboard, Flynn blew several whistle blasts that were not responded to by the LITTLE CHIP. Furthermore, the TEXACO OHIO took last minute evasive maneuvers in order to avoid the collision; namely, backing down and pulling hard to starboard. Captain Clayton of the LITTLE CHIP stated that he simply did not hear any whistles from the TEXACO OHIO. This may have been due in part to the fact that there was a hard wind blowing at the time and that prior to the collision, all hatches and portholes on the LITTLE CHIP appeared to be shut tight. In addition, there was no lookout posted on the deck of the trawler at that time. There is no evidence to indicate, as the plaintiff contends, that the TEXACO OHIO was attempting to pass between LITTLE CHIP and the east bank of the channel. The evidence establishes that the TEXACO OHIO was proceeding straight up the channel in the process of overtaking the trawler, when the trawler began crossing toward the tanker's port side.

## CONCLUSIONS OF LAW

The Court has jurisdiction of this case by virtue of the admiralty and maritime subject matter of the claims involved. U.S. Const. art. III, § 2; 28 U.S.C. § 1333; Rule 9(h), Fed.R.Civ.P. In a collision case such as this, the Court will apply the principles and precedents of admiralty law, *United States v. Reliable Transfer*, 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975), as well as Rules of the Road for Inland Waters, 33 U.S.C. § 151 et seq. and the Pilot Rules for Inland Waters, 33 C.F.R. § 80, et seq.

In order to apportion liability in this maritime collision, the Court is compelled to follow the mandate enunciated by the United States Supreme Court in *Reliable Transfer, supra*. There, the Supreme Court, in rejecting the divided damages rule, held as follows:

> We hold that when two or more parties have contributed by their fault to cause property damage in a maritime collision or stranding, liability for such damage is to be allocated among the parties proportionately to the comparative *degree* of their fault, and that liability for such damages is to be allocated equally only when the parties are equally at fault or when it is not possible fairly to measure the comparative *degree* of their fault. (Emphasis supplied.) (95 S.Ct. 1708 at 1715, 1716.)

The critical language in *Reliable Transfer* is, of course, "degree of fault." The Supreme Court's new emphasis on degree of fault as the determinative factor in apportionment of damages was amply demonstrated by its discussion of the inequities inherent in the divided damages rule:

> . . . An equal division of damages is a reasonably satisfactory result only where each vessel's fault is approximately equal and each vessel thus assumes a share of the collision damages in proportion to its share of the blame, or where proportionate degrees of fault cannot be measured and determined on a rational basis. The rule produces palpably unfair results in every other case. For example, where one ship's fault in causing a colli-

sion is relatively slight and her damages small, and where the second ship is grossly negligent and suffers extensive damage, the first ship must still make a substantial payment to the second. (95 S.Ct. 1708 at 1713.)

In assessing the degree of fault of each vessel in the case at bar, it is clear from the facts that the TEXACO OHIO was overtaking the LITTLE CHIP. Accordingly, the TEXACO OHIO's actions vis-a-vis the LITTLE CHIP fall within the ambit of Article 24 of the Rules of the Road for Inland Waters (33 C.F.R. § 209) which defines an overtaking vessel as "every vessel coming up with another vessel from any direction more than two points abaft her beam." Article 24 goes on to say that if a vessel, upon approaching another vessel, is in doubt as to whether she is overtaking or not, she is bound to assume that she is an overtaking vessel and keep out of the way of the overtaken vessel.

■ Nonetheless, the evidence is equally clear that even as the TEXACO OHIO was overtaking the LITTLE CHIP, the trawler was crossing in front of the tanker. As such, she was required by Article 19 of the Inland Rules to exercise due care before attempting to engage in such a maneuver since the tanker was on her starboard.[1] Not only did the LITTLE CHIP thereby commit a statutory violation of the Inland Rules of the Road, but was also actively negligent in other respects. The LITTLE CHIP failed to exercise reasonable care under the circumstances when she failed to hear and heed the warning signals of the TEXACO OHIO. Its failure to hear such signals was caused in no small part by the trawler's failure to keep a lookout on its deck. Under the circumstances of this case, when the LITTLE CHIP's hatches and portholes were closed and she knew a larger tanker was in the vicinity, failure to keep a lookout was negligence in itself. *See, Ala-*

mo *Chemical Transportation v. M/V OVERSEAS VALDEZ*, 398 F.Supp. 1094, 1975 A.M.C. 1762 (E.D.La.1975). Furthermore, the LITTLE CHIP was negligent in failing properly to monitor its radio.

■ Under the rule of *The Pennsylvania,* 86 U.S. (19 Wall.) 125, 22 L.Ed. 148 (1874), the TEXACO OHIO, being statutorily at fault, would bear the burden not only of showing that its fault did not cause the collision, but that it *could not* have caused the collision. While the rule of *The Pennsylvania* still casts fault upon a party who has violated a statute, *Reliable Transfer* requires that fault be measured in its proportionate degree. Such an interpretation of *Reliable Transfer* is borne out by the Court's comment that:

. . . the potential unfairness of the division [divided damages rule] is magnified by the application of the rule of The Pennsylvania . . ., whereby a ship's relatively minor statutory violation will require her to bear half the collision damage unless she can satisfy the heavy burden of showing "not merely that her fault might not have been one of the causes, or that it probably was not, but that it *could not have been*." (Emphasis supplied.) (95 S.Ct. 1708 at 1713).

■ In apportioning the relative degree of fault among the parties in this case, the Court must be aware of the navigational problems confronting a large tanker when encountering a smaller and more maneuverable vessel such as the LITTLE CHIP. As a practical matter, the commercial transportation of goods in maritime commerce by large freighters or tankers would come to a virtual standstill if those vessels were at the navigational mercy of smaller vessels that constantly sail the inland waterways of the United States. As a maritime fact of life, larger vessels such as the TEXACO OHIO are less maneuverable than smaller vessels and have greater difficulty stopping

---

1. Article 19 of the Inland Rules of the Road (33 U.S.C. § 204) provides:

   When two steam vessels are crossing, so as to involve risk of collision, the vessel which

   has the other on her starboard, shall keep out of the way of the other.

once they are underway. As such, if large vessels were required to stop and give way, under penalty of violating some rule of the road, to every fishing vessel they may encounter, those larger vessels would be virtually paralyzed in their movement. Accordingly, it is almost certain that tankers and freighters, such as the TEXACO OHIO, will violate some statutory rules of the road in their almost daily encounters with smaller fishing vessels such as the LITTLE CHIP.

In such a situation, for the Court to apportion a great degree of fault to larger vessels for their technical violation of statutory navigational rules would constitute the "potential unfairness" described by the Supreme Court in *Reliable Transfer*. This is not to say that smaller and more maneuverable vessels must utilize a higher degree of care when confronting larger craft. Nor does it mean that larger vessels are not required to exercise ordinary care and good seamanship on inland water. This Court is merely stating that, in light of *Reliable Transfer*, it must take into consideration factors other than statutory violations in apportioning degree of fault. The evidence in the case at bar is clear that other than such technical statutory violation of the inland rules, the TEXACO OHIO used all due care and good seamanship in its confrontation with the LITTLE CHIP. The TEXACO OHIO blew several warning blasts of its whistle and tried to avoid the collision by backing down and moving to starboard.

The LITTLE CHIP, on the other hand, completely oblivious to its fate, crossed in front of the TEXACO OHIO. This was done despite the whistle blasts of the TEXACO OHIO and the warnings issued by the DELTA. The LITTLE CHIP, knowing the TEXACO OHIO was near, nonetheless had all of its hatches and portholes closed, failed to have a lookout and failed to properly monitor its radio.

In view of such facts, the Court finds the LITTLE CHIP and the TEXACO OHIO 90% and 10% at fault, respectively, and hereby proportionately allocates liability for damages among them accordingly.