CURTIS BAY TOWING COMPANY, as owner pro hac vice, of the Motor Tug SANDY POINT, Appellees,

v.

THE M/V MARYLAND CLIPPER, her engines, tackle, etc., in rem, Defendant.

NORFOLK, BALTIMORE AND CAROLINA LINES, INC., in personam, Appellant,

v.

Motor Tug SANDY POINT, her engines, tackle, etc., in rem, Counter-Defendants.

No. 78–1212.

United States Court of Appeals, Fourth Circuit.

Argued March 12, 1979.

Decided June 1, 1979.

---

Francis J. Gorman, Baltimore, Md. (David R. Owen, Semmes, Bowen & Semmes, Baltimore, Md., on brief), for appellant.

Geoffrey S. Tobias and John T. Ward, Baltimore, Md. (Ober, Grimes & Shriver, Baltimore, Md., on brief), for appellees.

Before HAYNSWORTH, Chief Judge, and WINTER and HALL, Circuit Judges.

PER CURIAM:

This suit in admiralty arose from a collision between M/V MARYLAND CLIPPER, owned by Norfolk, Baltimore and Carolina Lines, Inc. (NBC Line), and the tug SANDY POINT, owned by Curtis Bay Towing Company (Curtis Bay). By an action and counterclaim *in rem* and *in personam*, each owner sought recovery from the other and the other's vessel. The district court found that the negligence of both parties contributed to the collision, and it ordered that each party bear its own damages. NBC Line has appealed.

While we think that the district court correctly found fault on the part of each vessel, we conclude that the district court failed to apply properly the rule of comparative fault as announced in *United States v. Reliable Transfer Co.*, 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975). We therefore vacate the judgment and remand the case to the district court for further proceedings.

## I.

Curtis Bay initiated the litigation and NBC Line counterclaimed. In a pretrial order, NBC Line claimed damages of $79,-742.87, while Curtis Bay claimed damages of $21,815.96. The district court ordered a bifurcated trial on the issues of liability and damages, with damages "to be settled or tried after the determination of liability."

The collision occurred in Baltimore Harbor shortly after 8 o'clock on a foggy morning, March 5, 1976. The MARYLAND CLIPPER was on a routine voyage from Norfolk to Baltimore, while the SANDY POINT was leaving Baltimore Harbor, followed by another tug about 200 feet directly astern. The MARYLAND CLIPPER was found at fault in a number of respects. First, because its captain ordered the lookout not to call the bridge on his own initiative, the district court held that the MARYLAND CLIPPER failed to post an adequate lookout. Second, the MARYLAND CLIPPER was negligent in that its captain lacked an adequate understanding of its

radar system. Finally, the MARYLAND CLIPPER failed to "go at a moderate speed" in the fog, as required by 33 U.S.C. § 192.

The district court also found fault on the part of the SANDY POINT. First, the SANDY POINT was found negligent in failing to post a lookout. The district court added, however, that since the bridge was only about twenty feet from the bow, the SANDY POINT's negligence in this respect was not as serious as the MARYLAND CLIPPER's negligent failure to post an adequate lookout. Second, the SANDY POINT failed to stop engines upon hearing the fog signal of a vessel whose position had not been ascertained, as required by 33 U.S.C. § 192. Finally, the captain of the SANDY POINT was found negligent in failing to break in over channel 13 of his radiotelephone once the MARYLAND CLIPPER was detected on radar. Other allegations of fault attributed by NBC Line to the SANDY POINT were rejected by the district court.

The district court concluded:

> In conclusion the Court has found both M/V MARYLAND CLIPPER and Motor Tug SANDY POINT guilty of statutory violations as well as negligence. However, after reviewing all the evidence offered at trial the Court concludes that MARYLAND CLIPPER's faults were more serious in nature than those of SANDY POINT, and therefore she is liable to a greater degree. Although MARYLAND CLIPPER sustained a larger amount of damages than did SANDY POINT, the Court finds the degree of liability to be equivalent to this percentage of higher damages. Accordingly, the Court finds that both parties being liable for the collision are to bear the burden of paying their own damages. . . . It will not now be necessary for a separate trial on the issue of damages.

## II.

■ NBC Line attacks the correctness of some of the district court's findings of fault on the part of the MARYLAND CLIPPER. It argues also that the district court erroneously failed to find fault on the part of the SANDY POINT in certain respects in addition to those found by the district court.[1]

From our review of the record, we do not think that the district court's findings were clearly erroneous. Nor do we think that the evidence requires findings of fault on the part of the SANDY POINT other than those made by the district court. Its findings will therefore not be disturbed. F.R. Civ.P. 52(a).

## III.

■ The parties agree that the damage aspect of this case is governed by the rule of *Reliable Transfer*, where the Supreme Court stated:

> We hold that when two or more parties have contributed by their fault to cause property damage in a maritime collision or stranding, liability for such damage is to be allocated among the parties proportionately to the comparative degree of their fault, and that liability for such damages is to be allocated equally only when the parties are equally at fault or when it is not possible fairly to measure the comparative degree of their fault.

421 U.S. at 411, 95 S.Ct. at 1715.

We think that the district court failed to apply properly the rule of *Reliable Transfer*. The district court made no specific finding on the proportionate degrees of fault of the two parties. While many times this allocation of fault cannot be made with absolute mathematical precision, still some numerical approximation of the proportionate degrees of fault must be made to enable the district court to apportion damages and

---

1. NBC Line also asserts as error the district court's refusal to admit into evidence the report of a Coast Guard official who had investigated the collision. The district court ruled that the report was inadmissible hearsay and was not subject to the exception of rule 803(8) of the Federal Rules of Evidence. The district court added, however, that it had read the report and that its findings would not have been changed if the report had been admitted. We therefore see no need to decide whether the report was properly excluded.

to enable an appellate court to review the district court's decision intelligently. A conclusion no more specific than that one party's fault was greater than the other's is not sufficient. On remand, the district court must determine the proportionate degrees of fault of the two parties, based on its findings of fact with regard to each party's statutory violations and negligence.

 Curtis Bay contends that the district court's conclusion that the SANDY POINT's degree of liability was "equivalent to [its] percentage of higher damages" constitutes a finding that the respective degrees of fault of the two parties were in proportion to the claimed damages of the two parties—i. e., 79,742.87 to 21,815.96, or roughly 79% to 21%. The flaw in this argument is that the issue of damages was reserved; the actual damages sustained by each party has neither been stipulated nor judicially determined. Even if a finding that the relative fault of the parties was proportionate to the claimed damages can be inferred from the district court's order that each party bear its own damages, the district court erred in dispensing with trial on the damages issue, thereby assuming that the damages of both parties were as they claimed. A finding that NBC Line was 79% at fault and Curtis Bay 21% at fault would not justify an order that each party bear its own damages if the proof developed at trial shows that the parties' respective damages bear a different proportion. Thus, on remand the district court should allocate the comparative degree of fault of the parties on the basis of a percentage or a ratio[2] and then proceed to trial on the issue of damages unless they can be stipulated by the parties.

*VACATED AND REMANDED.*

---

2. Since the district court found markedly disparate fault on the part of the parties, albeit erroneously by reference to claimed damages, we treat as foreclosed the possibility of an equal allocation of damages as permitted by *Reliable Transfer* when the parties are equally at fault or it is not possible to measure the comparative degree of their fault.