**UNITED OVERSEAS EXPORT LINES, INC.**

v.

**MEDLUCK COMPANIA NAVIERA, S.A., etc., et al.**

**Civ. A. No. 77-3673.**

United States District Court,
E. D. Louisiana.

May 6, 1981.

Charles E. Dunbar, III, New Orleans, La., for plaintiff.

Terriberry, Carroll, Yancey & Farrell, New Orleans, La., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BEER, District Judge.

To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any conclusions of law constitute findings of fact, they are so adopted.

### Findings of Fact

1. This matter involves cross actions by owners of the M/V Oriental Ruler and M/V Medjoy for damages sustained as a result of a collision of the ships in La Union Harbor, San Salvador, on June 14, 1977.

2. United Overseas Export Lines, Inc. is the owner of the M/V Oriental Ruler, and Stanic Compania Naviera, S.A. is the owner of the M/V Medjoy.

3. The M/V Oriental Ruler is a combination oceangoing cargo/passenger vessel, approximately 8,000 gross tons. She is 537' in length, was built in 1954 and flies the Liberian flag.

4. The M/V Medjoy is a cargo vessel, approximately 3,700 gross tons. She has three hatches, all of which are forward of the midship house. The Medjoy was built in 1957 and flies the Greek flag.

5. The Medjoy arrived in the Port of Cutuco, San Salvador, which is on La Union Bay in the Gulf of Fonseca, on June 12, 1977. She first went to anchor and remained at anchor, loading cargo from barges, until going to the dock, where she was secured port side to its offshore side on June 13, 1977.

6. The Oriental Ruler arrived in the Port of Cutuco on June 13, 1977, and went to anchor in La Union Harbor, paying out three shackles of chain.

7. Meanwhile, at the dock, cargo operations resumed aboard the Medjoy and continued until completion at about 0100, June 14, 1977.

8. Port Pilot Jose Venitez boarded the Medjoy at about 0130, on June 14, 1977, to take the vessel from the port.

9. The procedure followed by Medjoy's pilot involved backing the ship down the dock and, once clear of the open end of the dock, swinging her stern to port. Thereafter, the ship proceeds ahead on a northeasterly heading.

10. When the Medjoy commenced her undocking procedure, the Oriental Ruler was still at anchor in the general area where the Medjoy had been anchored the preceding day.

11. The Medjoy slipped her lines and, by approximately 0150, the forward spring line was the last to be released. She moved slow astern and backed down the dock until approximately 0155, when her bow was clear of the end of the dock, and she then put her engine half ahead and the rudder hard to starboard to turn toward the Cutuco channel.

12. As the Medjoy proceeded ahead after clearing the dock, the Oriental Ruler began the process of coming to the berth vacated by Medjoy.

13. Thus, by approximately 0155, Oriental Ruler was moving ahead at a very slow rate of speed.

14. At this same time, half ahead was ordered for Medjoy, and her wheel was put hard starboard. Medjoy went into its turn to starboard, the Master of the Medjoy first observed the green starboard light of the Oriental Ruler and ordered full ahead and hard port, and the Medjoy continued ahead and swung down into a position where a collision with the Oriental Ruler took place.

15. Just preceding the collision, the Master of the Oriental Ruler ordered half astern and then full astern, but the Oriental Ruler did not have time to respond to these orders before the impact of collision.

16. The impact of collision, which occurred at approximately 0200 A.M., caused damage to the Medjoy in the area of the No. 3 hatch on her port side. The Oriental Ruler was damaged in the area of her bow.

17. After the collision, the two vessels remained locked together for about two hours. When they finally drifted or maneuvered free, the Medjoy went to anchorage and the Oriental Ruler proceeded to the wharf where she tied off.

18. Just prior to the collision, the Medjoy was proceeding on half ahead, which gives her speed of about five to six knots. Very shortly before the collision, the full ahead order was given, and she began to increase her speed through the water. At the time of the collision, the Oriental Ruler was moving slowly ahead. The collision between the Oriental Ruler and the Medjoy at approximately 0200 A.M. on June 14, 1977, was caused by errors in navigation committed by the navigating personnel aboard both vessels. Medjoy was maintaining an improper lookout and failed to make a plot of the position of Oriental Ruler. Medjoy also failed to stop and/or reverse when the danger of collision was or should have been apparent. In fact, the collision between the two vessels was made more likely by the last minute maneuvers of the Medjoy in swinging into the path of Oriental Ruler at an accelerated rate of speed under the influence of the hard port and full ahead orders given prior to the collision. Medjoy failed to monitor the location of Oriental Ruler and failed to navigate

properly. The Oriental Ruler contends she was at anchor at the time of collision and urges that the sole fault for the collision rests with the Medjoy, as the moving vessel. However, Oriental Ruler was not actually at anchor and was commencing to navigate in order to move to the berth vacated by the Medjoy. As she turned to starboard, Medjoy became situated on Oriental Ruler's starboard hand, and Oriental Ruler had a duty to keep out of her way since Oriental Ruler was actually underway and not at anchor in the full sense of those words. Thus, at the time of collision, the Oriental Ruler was navigating in violation of the applicable rules of the road.

19. The collision could have been avoided if Medjoy had paid closer attention to the location and position of Oriental Ruler and, by doing so, had not navigated so close to her position regardless of whether she was fully at anchor or just commencing to get under way, and, on the other hand, by Oriental Ruler if she had waited just a few minutes longer for Medjoy to clear the channel as she was obviously putting to sea. The situation is comparable to a collision between one motorist who is "inching" into the intersection and another motorist who is proceeding without a proper lookout into the same intersection. Even so, I believe that somewhat greater fault lies with Medjoy and apportion same on the following basis: Medjoy, 65% at fault; Oriental Ruler, 35% at fault.

### Conclusions of Law

1. This court has jurisdiction of this action as an admiralty and maritime claim, and venue is properly laid in the Eastern District of Louisiana.

2. As this case involves a collision in international waters between vessels of different registry, liability must be determined according to the general maritime law as interpreted by the courts of the forum in which the action proceeds.

3. Liability rests on proof, by a fair preponderance of the evidence, that a vessel involved in a collision either violated the

rules of the road, which contributed to the collision, or that her crew was negligent.

4. Under the rule of proportional fault announced in *United States v. Reliable Transfer Co.*, 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975), this court is obligated to apportion the damages between the two vessels in proportion to their comparative degrees of fault for the collision.

Counsel for plaintiff is instructed to prepare a judgment consistent with these findings and conclusions.