952 F.2d 404
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellant,
v.
M/V J. ROBERT HARD, and American Commercial Barge Line
Company, Defendants-Appellees.
 No. 91-5228.
 United States Court of Appeals, Sixth Circuit.
 Jan. 10, 1992.
 
 Before KEITH and RYAN, Circuit Judges, and ALDRICH, District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 The United States appeals the order of the district court dismissing its complaint in admiralty for damages sustained as a result of a collision on the Mississippi River. The issue raised by this appeal is whether the district court erred in dismissing the United States' complaint on the ground that its negligence was the sole proximate cause of the collision. We conclude that the district court erred and therefore reverse.
 
 I.
 
 2
 On the night of July 28-29, 1982, the Dredge Ockerson, owned by the United States and operated by the United States Corps of Engineers, was dredging a channel in the Mississippi River between Mile 539 and 540.5. The Ockerson was anchored near the east shore of the river, about 75 feet west of the red buoy line that marks the east side of the channel.
 
 
 3
 A dredging discharge pipeline was attached to the Ockerson. This pipeline consisted of sixteen connected sections of pipe, each approximately fifty-two feet long, floating on pontoons. It extended across the channel and discharged the "spoil" from dredging just west of the black buoy line that marks the west side of the channel. The width of the channel was disputed by the parties and left undetermined by the district court because it was not relevant for the court's decision. The United States argues that the channel was at least 850 feet wide, while the defendant, the Motor Vessel J. Robert Hard, argues that the channel was between 350 and 400 feet wide.
 
 
 4
 The position of the pipeline was controlled by a pipelineman who was stationed at the end of the pipeline in a structure called a "pontoon house." The pipelineman communicated with the bridge of the dredge by walkie-talkie.
 
 
 5
 While the Ockerson was operating this night, the Hard was proceeding upstream behind 20 barges, which had been arranged in four rows of five barges each. The barges in the lead row were 245 feet long, and all the others were 195 feet long. Each barge was 40 feet wide. Such a group of barges is called a tow. This tow was 200 feet wide and approximately 830 feet long. The Hard maneuvered its tow, contrary to what the name implies, by pushing it.
 
 
 6
 Cortez Richardson, the pilot of the Hard, spotted the Ockerson some distance upstream[1] and contacted it for passing instructions. Robert Quinley, the second mate of the Ockerson, was on duty at the time and instructed the Hard to pass the dredge on the "two whistle side." Under these circumstances, a two whistle pass meant that the Hard was to pass the Ockerson by placing its starboard side on the Ockerson's port side.
 
 
 7
 Quinley could not see the barge at the time of this communication, but it was undisputed that he could see the Hard at least twenty minutes before the collision. In order to clear the channel so that the Hard could pass, the Ockerson moved from a position 75 feet west of the red buoy line to the line itself. It could move no further because the water was too shallow to accommodate its draft. The Ockerson also instructed the pipelineman to move the pipeline out of the channel. To accomplish this, the pipelineman adjusted the angle of the baffle plates at the end of the pipeline to cause the pipeline to swing in an arc from a position more or less perpendicular to the Ockerson to a position parallel to and downstream from the Ockerson. It was undisputed that the Ockerson had more than enough time to complete these maneuvers. To minimize the interruption of the dredging operation, however, Quinley did not immediately move the dredge or the pipeline.
 
 
 8
 Approximately thirty to forty minutes after the first radio communication, the right-hand lead barge of the Hard's tow collided with the end of the dredge pipeline, destroying the pontoon house and either destroying or damaging the first three sections of the dredge pipeline. The exact position of the pontoon house in relation to the red buoy line was disputed by the parties. The United States' most favorable testimony placed it thirty feet west of the red buoy line, while other evidence placed it as much as seventy-five feet west of that line. The district court did not resolve this dispute because it found that as long as the pipeline obstructed part of the channel, the exact number of feet it obstructed was immaterial.
 
 
 9
 Based on these findings of fact, the court concluded as a matter of law:
 
 
 10
 Where the Watch Officer of a dredge whose operation blocks the river channel fails to promptly remove the dredge pipeline from such channel, that failure is the proximate cause of a collision with an oncoming barge tow whose presence was known at all times to the operators of the dredge.
 
 
 11
 The court reached this conclusion upon the following reasoning:
 
 
 12
 The obligation upon the pilot of the M/V Hard was to remain within the channel, however wide it might have been, and the obligation of the Watch Officer of the Ockerson was to remove completely the dredge and its dredge pipeline from the channel in order to give the M/V Hard use of the entire channel to which it was entitled. The evidence discloses that the only obligation placed upon the M/V Hard was to pass the dredge and its pipeline on the "two whistle side."
 
 
 13
 The United States appeals, claiming the district court applied an incorrect legal standard to measure the duty of the government vessel.
 
 II.
 
 14
 The United States argues that the district court effectively held that a dredge has an absolute duty to remove itself completely from a channel whenever another vessel seeks to pass it. According to the United States, such a holding is contrary to well-established law that a dredge's only duty is to move to permit another vessel, if prudently navigated, to pass safely.
 
 
 15
 The Hard responds that the district court did not place an absolute duty on the dredge. According to the Hard, the court simply found as a matter of fact that under the circumstances, the Ockerson was solely at fault and its negligence was the sole proximate cause of the collision. The Hard contends that such factual findings can be reversed only if they are clearly erroneous. The Hard concludes that there is substantial evidence in the record to support the district court's findings and therefore those findings are not clearly erroneous.
 
 
 16
 We conclude that the district court did place an absolute duty on the dredge to remove itself from the channel. Although the court found that the Ockerson's negligence was the sole proximate cause of the collision, it reached that finding because of the way it viewed the respective duties of the two vessels. It concluded that the Hard had not breached its duty and therefore could not be at fault. The duty it found the Hard not to have breached, however, was not the general duty of due care, but the much more limited duty of staying within the channel. In addition, the duty it found the Ockerson to have breached also was not the general duty of due care but an absolute duty to remove itself and its pipeline completely from the channel. The court's language with respect to the respective duties of the vessels is quite clear:
 
 
 17
 The obligation upon the pilot of the M/V Hard was to remain within the channel, however wide it might have been, and the obligation of the Watch Officer of the Ockerson was to remove completely the dredge and its dredge pipeline from the channel in order to give the M/V Hard use of the entire channel to which it was entitled.
 
 
 18
 The Hard argues that taken in the context of the district court's entire opinion, this language did not place an absolute duty on the Ockerson. Rather, according to the Hard, the court's language is merely a factual conclusion that under the circumstances of this case the Ockerson was solely at fault for the collision. We disagree.
 
 
 19
 In its entire opinion, the court does not even address, much less analyze, the United States' allegations of negligence on the part of the Hard. If the court had been analyzing this case under the general duty of due care, it would have addressed the possible negligence of the Hard. It did not, however, because it concluded as a matter of law that the Hard's only duty was to remain within the channel.
 
 
 20
 For these reasons, we conclude that court placed an absolute duty on the Ockerson to remove itself and its pipeline from the channel.
 
 III.
 
 21
 The Hard argues that the proper standard of review for this case is the clearly erroneous standard. Although it is true that a district court's determination of negligence and allocation of fault are reviewed under that standard, Phillips Petroleum Co. v. Stokes Oil Co., 863 F.2d 1250, 1255 (6th Cir.1988), a determination of the proper standard of care is a legal conclusion subject to de novo review. Weyerhaeuser Co. v. Atropos Island, 777 F.2d 1344, 1347 (9th Cir.1985).
 
 
 22
 The general tort concepts of negligence and proximate cause apply in admiralty cases. See Phillips, 863 F.2d at 1255. Liability for a collision may be imposed if there is negligence, and damages are allocated among tort-feasors on the basis of comparative fault. See United States v. Reliable Transfer Co., 421 U.S. 397, 411 (1975). The standard for determining negligence is reasonable care under the circumstances. See Weyerhaeuser, 777 F.2d at 1347.
 
 
 23
 As noted, the district court did not test either vessel's actions in this case by a standard of reasonable care. Rather, it held that the Ockerson had an absolute duty to remove itself completely from the channel, while the Hard's only duty was to remain within the channel. Neither the district court nor the parties cite any authority in support for the application of these special duties.
 
 
 24
 We think the district court erred in failing to test the actions of both vessels under the traditional reasonable care standard.
 
 IV.
 
 25
 The United States insists that we are obligated, on the record before us, to find the Hard liable for the collision. The United States argues that a dredge's only duty is to move to permit another vessel, if prudently navigated, to pass safely, that it satisfied this duty, and that the Hard should therefore be held solely at fault for the collision. Although we agree with the government's formulation of the duty involved, we cannot determine whether the Ockerson satisfied its duty because the district court did not make the necessary findings of fact with respect to this issue. It may be that the Ockerson was negligent in failing to move its pipeline sooner; perhaps not. We have no findings of fact on the matter.
 
 V.
 
 26
 In summary, we hold that the district court therefore erred by holding the Ockerson to an absolute duty to remove itself and its pipeline completely from the channel and holding the Hard to the limited duty of remaining within the channel. The court should have applied the general standard of reasonable care under the circumstances to both parties and determined the parties comparative fault under that standard. We REVERSE and REMAND with directions to the district court to make appropriate findings of fact and conclusions of law, consistent with the general standard of reasonable care.
 
 
 
 *
 The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 The district court noted that almost all the times and distances in this case have been estimated. Although the exact distance between the Ockerson and the Hard at the time of this communication is uncertain, the district court noted that it was undisputed that the distance was sufficiently great to give the Ockerson enough time to remove itself and the pipeline from the channel