**INLAND OIL AND TRANSPORT CO.**

v.

**ARK–WHITE TOWING COMPANY**
**et al.**

Civ. A. No. C.A. 79–3267.

United States District Court,
E. D. Louisiana.

May 18, 1981.

Scott R. Wheaton, Jr., New Orleans, La., for plaintiff.

Frederick T. Haas, III, and Ronald A. Johnson, New Orleans, La., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BEER, District Judge.

To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any conclusions of law constitute findings of fact, they are so adopted.

### Findings of Fact

1. On October 14, 1978, at about 3:40 a.m., the M/V Lady Kimberly, with a tow of five barges, was proceeding downbound on the Mississippi River above Thomas Point when she contacted[1] the upbound tow of the M/V George B. Cummings. The M/V George B. Cummings, on the stern port side, and the M/V Vance M. Thompson, on the stern starboard side, were pushing the tow of eight barges and two survey boats. When the captain of the M/V Lady Kimberly, Glenn Wilson, contacted the M/V George B. Cummings, its captain, William Sheeks, reported that his tow was located below Thomas Point.

2. A passing agreement was made between Captain Wilson and Captain Sheeks for a one whistle, port-to-port passing. To the understanding of both captains, this meant that the M/V George B. Cummings was to hold its position at the second descending buoy below the point while the M/V Lady Kimberly navigated the point. The vessels were to pass each other on their port sides and the M/V George B. Cummings was to hold below the point until certain that M/V Lady Kimberly had negotiated the point and passed the M/V George B. Cummings' tow.

3. As the M/V Lady Kimberly rounded the point, the vessels sighted each other and realized that a collision was imminent. A radio conversation ensued and each vessel started to back down to avoid colliding. They were unsuccessful. The collision occurred at the point of the port head corner of the lead barge in the M/V George B. Cummings' tow and the first two barges on the port side of the M/V Lady Kimberly's tow (barges IOT-302 and IOT-155).

4. Captain Wilson testified that as M/V Lady Kimberly rounded the point, the lead barge was pointing towards Thomas Point and the tow was slightly left of the center line of the river. He saw the searchlights of M/V George B. Cummings shining from behind the point and believed that M/V George B. Cummings was holding up below the point as agreed. As he proceeded into the bend at Thomas Point, he noted the tow of M/V George B. Cummings proceeding upriver. He immediately contacted Captain

---

1. By VHV two-way radio

Sheeks and told him that he thought the M/V George B. Cummings had agreed to hold up below the point. Captain Wilson testified that he heard no reply and started backing down the M/V Lady Kimberly while blowing the collision whistle. According to Captain Wilson, the M/V Lady Kimberly was about 600 feet off of the left descending bank when the collision occurred.

5. Captain Sheeks testified by deposition that the M/V George B. Cummings was stationed at the second descending buoy below the point, about 100 yards from the point, waiting for the M/V Lady Kimberly to come around the bend. M/V George B. Cummings' engines operated between "stop," "slow" and "half speed" as the tow held to the buoy line. When Captain Sheeks first saw M/V Lady Kimberly, she was about 300 yards above him heading down the river near the left descending shore. When Captain Wilson contacted him, Captain Sheeks testified that he replied that Wilson better back his tow down or they would hit. According to Sheeks, the M/V George B. Cummings was about 100 yards from the left descending bank when the collision occurred.

6. The captain of the M/V Vance M. Thompson, Captain Richard Coley, testified by deposition that M/V Vance M. Thompson was moving up Thomas Point with both engines full ahead, but at a slow speed. He first saw the M/V Lady Kimberly as the head of the tow of the M/V Vance M. Thompson and M/V George B. Cummings approached the second buoy. The M/V Lady Kimberly was somewhat left of the center of the river. He heard the conversation between Captain Wilson and Captain Sheeks that took place right before the collision. He testified that Captain Wilson said, "I thought you were going to hold up," and that Captain Sheeks replied, "You told me to keep coming." According to Captain Coley, the buoys were about 40 feet off the shore and the M/V Vance M. Thompson was approximately 100 feet off of the buoy line at the time of the collision.

7. The evidence shows that there were no unusual visibility problems on the night of the collision. The wind was blowing across the river towards the west bank, however it was not a very strong wind.

8. I find that the collision occurred primarily because M/V George B. Cummings did not hold to the passing agreement by failing to hold its position at the red buoy line. However, M/V Lady Kimberly contributed to the cause of the collision by navigating the bend in a manner that brought its tow too close to the left descending shore. Therefore, I apportion the fault on the following basis: M/V George B. Cummings, 75% at fault; M/V Lady Kimberly, 25% at fault.

### Conclusions of Law

1. This court has jurisdiction of this action as an admiralty and maritime claim, and venue is properly laid in the Eastern District of Louisiana.

2. The Western Rivers Rules of the Road as found in Title 33 U.S.C. § 301, et al., and the principles of general maritime law govern the facts of this case.

3. The descending vessel—the M/V Lady Kimberly—has the right-of-way and the ascending vessel—the M/V George B. Cummings—is the "burdened" vessel. 33 U.S.C. § 343.

4. Once a passing agreement is made between the vessels, both vessels must abide by the agreement and navigate their vessels and tows accordingly. Furthermore, the ascending vessel has the duty to navigate in such a way as to not interfere with the course to be followed by the descending vessel. Implicit in this responsibility is the duty to maintain sufficient control over the tow, to position the tow close to the left descending bank and to maintain that position until the passing is completed. *Harcon Barge Co. v. M/V J. B. Chauvin*, 487 F.Supp. 187 (N.D.Miss.1979).

5. The M/V George B. Cummings was negligent in its failure to maintain its position along the left descending bank and was guilty of statutory fault.

6. Although the M/V Lady Kimberly has the right of way under the Western River Rules of the Road, it is also required to navigate in a prudent manner. The M/V Lady Kimberly was somewhat negligent in the manner in which it navigated the point because it navigated the tow too close to the left descending bank.

7. Under the rule of proportional fault announced in *United States v. Reliable Transfer Co.*, 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975), this court is obligated to apportion the damages between the two vessels in proportion to their comparative degrees of fault for the collision.

Counsel for plaintiff is instructed to prepare a judgment consistent with these findings and conclusions.