ATLANTIC MUTUAL INSURANCE COMPANY, Plaintiff-Appellant,

v.

ABC INSURANCE COMPANY and Garber Brothers, Inc., Defendants-Appellees.

No. 79–3544
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit A

May 22, 1981.

Deutsch, Kerrigan & Stiles, Allen F. Campbell, New Orleans, La., for plaintiff-appellant.

Edward J. Koehl, Jr., New Orleans, La., for defendants-appellees.

Before BROWN, POLITZ and TATE, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

This law suit concerns a collision between two vessels, M/V KIMMIE C and M/V CHARLEEN B, heading in opposite directions in fog in the Eugene Island Channel of the Atchafalaya Bay. Appellant, protection and indemnity insurer of CHAR-

LEEN B, brought this subrogation action for contribution to the $58,544.00 it expended in settlement of a personal injury claim arising out of the collision. The District Court denied recovery, finding that the negligence of CHARLEEN B was the sole proximate cause of the collision. Because we find the District Court's total exoneration of KIMMIE C to be clearly erroneous, we reverse and remand.

On January 12, 1976, KIMMIE C, a towing vessel 61 feet long and 19 feet wide, left Morgan City, Louisiana pushing a flat-deck barge 140 feet long and 40 feet wide loaded with drilling equipment. KIMMIE C was proceeding south through the Eugene Island Channel, a dredged channel not less than 200 feet wide and 10 feet deep, on her way into the Gulf of Mexico. At the same time CHARLEEN B, a supply vessel 91 feet long and 24 feet wide, was proceeding north through the channel towards Morgan City.

Both vessels encountered dense fog with visibility limited to 50 to 150 feet. At a point when the two vessels were approximately a mile and a half apart, the captain of each vessel spotted the other vessel on radar but each was unsuccessful in making radio contact with the other. Radar was of little or no use when the vessels were within one quarter mile of each other. The District Court found that in spite of the dense fog, neither vessel blew fog signals. The Court further found that KIMMIE C proceeded at a moderate speed and kept to the starboard (west) side of the channel. The captain of CHARLEEN B, on the other hand, so the Court found, negligently failed to keep his vessel to the starboard (east) side of the channel so as to permit a port-to-port passing.[1] The Court determined that the vessels collided in the western half of the Channel as the sole result of the negligence of CHARLEEN B.

Roy Bellamy, a cook on CHARLEEN B, was allegedly injured during the collision. The Atlantic Mutual Insurance Company

1. The Court found that a current, moving at approximately four miles per hour, crosses the Channel from northeast to southeast, and that the captain of CHARLEEN B was aware of this current.

("Atlantic"), protection and indemnity insurer of CHARLEEN B and her owner, settled Bellamy's personal injury claims for $58,544.00. Atlantic instituted this subrogation action for contribution against the owner, Garber Brothers, Inc., and insurer, ABC Insurance Company, of KIMMIE C. Because the Court found that the negligence of KIMMIE C was not a contributing cause of the collision, Atlantic was denied recovery.

■ Atlantic assigns a number of points of error on this appeal. Initially, Atlantic argues that the District Court erred in applying the International Rules for Navigation at Sea[2] rather than the Navigation Rules for Inland Waterways.[3] It is evident that the District Court did in fact misinterpret the law defining when the Inland Rules are to be applied,[4] and that the collision apparently occurred in waters covered by the Inland Rules.[5] However, as Atlantic concedes, this error, if any, is harmless as the International Rules and Inland Rules relevant to this case are essentially the same.

We do not reach Atlantic's various points of error as to the District Court's findings of fact. We believe that on the basis of those findings and the uncontroverted testimony of the captain of KIMMIE C the Court's determination of no contribution on the part of KIMMIE C is clearly wrong.

On the day of collision, KIMMIE C committed at least two violations of the rules of the road.[6] First, as the District Court explicitly found, KIMMIE C failed to blow its fog signals although the situation clearly called for it.[7] Second, as the captain of KIMMIE C unequivocally testified, KIMMIE C instead sounded a passing signal at a time when CHARLEEN B was not in view.[8]

---

**2.** The District Court cited the International Rules as 33 U.S.C.A. §§ 143, *et seq.* In fact, these provisions were repealed in 1965 and replaced in substantially similar form by 33 U.S.C.A. §§ 1051, *et seq.*, 77 Stat. 194, which were in turn repealed and replaced in 1977 by 33 U.S.C. §§ 1601, *et seq.* At the time of the collision in this case, January 12, 1976, 33 U.S.C.A. §§ 1051, *et seq.* were the controlling provisions.

**3.** 33 U.S.C.A. §§ 151, *et seq.*

**4.** The Court found:
The Navigation Rules for Inland Waters apply to 'that part of the Atchafalaya River above its junction with the Plaquemine-Morgan City alternate waterway ...' 33 U.S.C. § 154 (1976). Since the collision in this case occurred *below* that point in the river, the inland rules do not apply. Rather, the International Rules for Navigation at Sea apply.
In fact, 33 U.S.C.A. § 154, governing rules for inland waters, provides in pertinent part:
The following regulations for preventing collisions shall be followed by all vessels upon the harbors, rivers, and other inland waters of the United States *except* ... that part of the Atchafalaya River above its junction with the Plaquemine-Morgan City alternate waterway ... (emphasis added).

**5.** The District Court made no explicit fact finding as to the precise location of the incident. However, 33 C.F.R. § 82.835(a) would suggest that the incident occurred within the demarcation for inland waterways. We do not, and need not, pass upon this question.

**6.** Atlantic contends additional violations of the rules of the road on the part of KIMMIE C including failure to proceed at a moderate speed in fog, and failure to stop or slow engines in fog. With respect to these contentions, we do not believe that the underlying fact findings of the District Court are sufficiently detailed to permit us to pass on these questions at this time. We observe, for example, that on the basis of testimony of the captain of KIMMIE C the District Court might, but need not, have concluded that KIMMIE C was hard aground at the time of the collision. We deem it appropriate to leave these questions for consideration, or reconsideration, by the District Court on remand.

**7.** *See* International Rules, 33 U.S.C.A. § 1076; Inland Rules, 33 U.S.C.A. § 191.

**8.** *See* International Rules, 33 U.S.C.A. § 1090; Inland Rules, 33 U.S.C.A. § 203. The following is an exchange between the captain of the KIMMIE C and counsel for Atlantic:
Q When you were a quarter of a mile apart, as I understand your earlier testimony, you said you heard a whistle. Is that true?
A That is true.
Q And you answered this whistle signal with a passing signal, one short and distinct blast. Is that true?
A Yes, that is true.
Q What does the whistle signal of one short and distinct blast mean?
A It means you are going to pass on the one-whistle side. In other words, you are supposed to maintain your side. He was

■ The Rule of *The Pennsylvania* enjoys continued validity in collision cases.[9] That Rule provides that when a ship violates a statutory rule intended to prevent collision, "the burden rests upon the ship of showing not merely that her fault might not have been one of the causes, or that it probably was not, but that it could not have been. Such a rule is necessary to enforce obedience to the mandate of the statute." *The Pennsylvania*, 86 U.S. (19 Wall.) 125, 136, 22 L.Ed. 148, 151 (1874); *Gele v. Chevron Co.*, 574 F.2d 243, 247 (5th Cir. 1978).

■ We find that on the facts of this case KIMMIE C clearly failed to overcome its burden of showing that "by all reasonable probabilities"[10] her violations of the rules of the road did not contribute to the cause of the collision. Although the District Court might find that "but for" CHARLEEN B being on the wrong side of the Channel,[11] the collision would not have occurred, it is also reasonably probable that if KIMMIE C had not sounded a passing signal, and instead had sounded a fog signal, at a time when the view from the wheel house barely extended past the bow of the barge she was pushing,[12] the vessels would not have proceeded to pass and thus would not have collided. This fault on the part of KIMMIE C cannot be dismissed as "merely fault in the abstract." *Bd. of Commissioners of the Port of New Orleans v. M/V Farmsum*, 574 F.2d 289, 297 (5th Cir. 1978).

While we determine the District Court's finding of no fault on the part of KIMMIE C to be clearly erroneous, we do not pass on what measure of damages, if any, is appropriate in this case. First, we leave the question of allocation to be determined by the District Court in a manner consistent with *United States v. Reliable Transfer Co., Inc.*, 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975), and this opinion. Second, we leave for the District Court the question of the validity of the personal injury claim of Bellamy and the reasonableness of the settlement of that claim.

REVERSED and REMANDED.

supposed to be on the east side and I was supposed to be on the west side. That is the passing signal.

Q At this time you were not in sight of one another. Is that correct?

A That is correct.

Q He was approximately a quarter of a mile away, as best you can tell, from your radar?

A Right.

Q Do you realize, Captain, under the Rules of the Road, the Rules of the Road for inland waters, it was wrong to sound passing signals when not in sight of another vessel?

A I realized it after I did it, but he blew one whistle and I answered him with one.

Q Did you hear that whistle signal,—the whistle signal you heard, did it seem to come from forward of your beam, coming from ahead of you?

A That's right.

Q But it was still foggy and you could not see him?

A It was.

Q Isn't it true, Captain, that at this point in time you should have kept blowing your fog signal?

A I should have, yes.

Q And you were wrong not to do so?

A I was.

9.  *The Pennsylvania* Rule was in no way affected by *United States v. Reliable Transfer Co.*, 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975) which overruled *The Pennsylvania* only to the extent of abolishing the mutual fault-equal contribution rule and substituting the new rule of allocation determined by the degree of comparative fault. *See, Tug Ocean Prince, Inc. v. United States*, 584 F.2d 1151, 1160 (2d Cir. 1978).

10.  See, *Gele*, 574 F.2d at 248.

11.  This fact finding is disputed by Atlantic.

12.  As discussed previously, the District Court found that at the time of the collision, visibility was limited to 50 to 150 feet. The barge which was being pushed by KIMMIE C was itself 140 feet long.