WARRIOR & GULF NAVIGATION COMPANY, Plaintiff–Appellee,

v.

UNITED STATES of America, Defendant–Appellant.

WARRIOR & GULF NAVIGATION COMPANY, etc., Plaintiff,

Hunt Oil Company, Insurance Company of North America, Defendants–Appellees,

v.

UNITED STATES of America, Defendant–Appellant.

PARKER TOWING COMPANY, Plaintiff–Appellee, Cross–Appellant,

v.

WARRIOR & GULF NAVIGATION COMPANY, Defendant,

United States of America, Plaintiff–Appellant, Cross–Appellee.

UNITED STATES of America, Plaintiff–Appellant, Cross–Appellee,

v.

PARKER TOWING COMPANY, Defendant–Appellee, Cross–Appellant.

SOUTHERN NATURAL GAS COMPANY, Plaintiff–Appellee,

v.

WARRIOR & GULF NAVIGATION COMPANY, et al., Defendants,

United States of America, Defendant–Appellant.

No. 87–7442.

United States Court of Appeals, Eleventh Circuit.

Feb. 6, 1989.

Edward J. Vulevich, Jr., Mobile, Ala., Thomas L. Jones, Charles R. Gross, U.S. Dept. of Justice, Civ. Div., Washington, D.C., Robert S. Greenspan, J.B. Sessions, U.S. Atty., Mobile, Ala., for U.S.

G. Hamp Uzelle, III, Hand, Arendall, Bedsole, Greaves & Johnston, Mobile, Ala., for Parker Towing Co.

James B. Newman, Coale, Helmsing, Lyons & Sims, Mobile, Ala., David L. Carroll, Rosen, Arwood, Cook & Sledge, P.A., Tuscaloosa, Ala., for Hunt Oil.

R. Boyd Miller, Cabaniss, Johnston, Gardner, Dumas & O'Neal, Mobile, Ala., for Sonat, Inc.

James P. Green, Brown, Hudgens, Richardson, P.C., Mobile, Ala., for Ins. Co. of No. America.

Donald C. Radcliff, Armbrecht, Jackson, DeMouy, Crowe, Holmes & Reeves, Broox G. Holmes, Mobile, Ala., for Warrior & Gulf.

Michael L. Minsker, Cozen & O'Connor, Philadelphia, Pa., for Southern Natural Gas and Sonat.

Before RONEY, Chief Judge, JOHNSON and SMITH *, Circuit Judges.

SMITH, Circuit Judge:

In this maritime tort case,[1] the United States District Court for the Southern District of Alabama found that the actions of the United States (Government) on December 2–3, 1983, by and through the United States Army Corps of Engineers, were the proximate cause of the damages sustained by Warrior & Gulf Navigation Company, Parker Towing Company, Hunt Oil Company, and Southern Natural Gas Company (collectively referred to as appellees) on the Black Warrior River and, on that basis, that the Government is liable to the appellees as a matter of law.[2] We reverse and remand.

*Issue*

The principal issue on appeal is whether the district court clearly erred by finding that the Army Corps of Engineers' operation of the lock and dam facilities on the Black Warrior River on the night of December 2, 1983, and in the morning of December 3d, was the proximate cause of the damages incurred by appellees.

*Background*

A. *The Black Warrior River and Its Lock and Dam System*

The Black Warrior River flows in a southwesterly direction from an area generally north of Tuscaloosa and west of Birmingham to Demopolis, Alabama. At Demopolis, the Black Warrior River joins the Tombigbee River and subsequently flows south, joining with the Alabama River to form the Mobile River, which empties into Mobile Bay and eventually into the Gulf of Mexico.

In order to improve the navigability of the Black Warrior River, there exists a system of four lock and dam facilities constructed and operated by the Army Corps of Engineers.[3] Proceeding upstream from Demopolis, this system is comprised of the following facilities: the Warrior lock and dam located at river mile marker (RMM) 261, the William Bacon Oliver lock and dam at RMM 338 (located within the southern part of the city of Tuscaloosa), the Holt lock and dam at RMM 347, and the John Hollis Bankhead lock and dam at RMM 365. The Highway 82 Bypass Bridge crosses the Black Warrior River in Oliver Lake at RMM 341.5, or 5.5 miles below the Holt facility and 3.5 miles upstream of the Oliver facility. This system of lock and dam facilities provides the Black Warrior River with a navigable channel that is 200

---

* Honorable Edward S. Smith, U.S. Circuit Judge for the Federal Circuit, sitting by designation.

1. The jurisdiction of the district court was based on 28 U.S.C. § 1333 (1982) and on the Suits in Admiralty Act, 46 U.S.C. §§ 741–752 (1982).

2. *Warrior & Gulf Navigation Co. v. United States,* Civil Action Nos. 84–0632–T, 84–0672–T,

84–1341–T, 85–0574–T, 85–0983–T (S.D.Ala. May 18, 1987). This case was tried on liability only.

3. The Rivers and Harbors Act, 33 U.S.C. §§ 401 *et seq.* (1982), provides the Army Corps of Engineers with authority to construct and operate the facilities comprising the Black Warrior River lock and dam system.

feet wide and 9 feet deep. The Black Warrior River lock and dam system is comprised of "run-of-the-river" facilities and not "flood control" facilities within the meaning of 33 U.S.C. § 702c *et seq.*

### B. *The Unprecedented Rain*

As found by the district court, during the evening of December 2d and in the early morning of December 3, 1983, there was an "unprecedented rainfall" in the area of Birmingham and Tuscaloosa, Alabama. The district court cited testimony of a towboat captain, not employed by any of the parties to this proceeding, that it was raining so hard that, at one point during this period, the river was rising at the rate of approximately 1 foot every 5 minutes. In the area just below the Bankhead facility, 10.3 inches of rain fell during the 12–hour period from 7 p.m. on December 2d to 7 a.m. on December 3d.

### C. *The Critical Events*

On the night of December 2d, three Warrior & Gulf Navigation Company (Warrior & Gulf) towboats, the MUSKOGEE, the APALACHE, and the CADDO, were proceeding downstream from above the Holt facility to ultimate destinations south of the Oliver facility. At this same time, the Warrior & Gulf towboat, TAHOME, with two empty barges in tow, was proceeding upstream above the Oliver facility. The MUSKOGEE, the APALACHE, and the CADDO, each pushing a tow consisting of six loaded coal barges, arrived at the Holt facility between 10 p.m. and midnight on December 2d and all three proceeded through the lock. The CADDO was the third of the Warrior & Gulf towboats to proceed through the Holt lock. The district court found that the CADDO departed the lock prior to 1:50 a.m. and that the CADDO was locked through the Holt facility sometime between 12:58 a.m. and 1:50 a.m. At approximately 2:30 a.m., as the CADDO proceeded down the river from the Holt facility, she collided with the Highway 82 Bypass Bridge and her tow broke up. The CADDO put out a call for assistance over the VHF radio and the APALACHE and the TAHOME, both of which were

above the Oliver facility at that time, proceeded upstream to assist the MUSKOGEE in aiding the CADDO. The APALACHE left her six loaded barges, the MUSKOGEE left her two loaded barges, and the TAHOME left her two empty barges moored to mooring cells above the Oliver facility. Four more of the MUSKOGEE's loaded barges were moored below the Oliver facility. Eventually, five of the CADDO's barges were retrieved, but one loaded barge sank.

While the three tugs were working to retrieve the CADDO's tow, the six loaded barges from the APALACHE's tow and the two loaded barges from the MUSKOGEE's tow broke loose from their moorings above the Oliver facility and drifted downstream, going over the top of Oliver Dam, which was underwater at that time as a result of the rapidly rising river. These barges struck and broke loose the four loaded barges of the MUSKOGEE's tow located below the Oliver facility and also hit the tow of the THELMA PARKER. As a result of this collision, two empty Parker Towing Company (Parker) barges, the PTC 216 and the PTC 235, were broken out of the tow and damaged.

The drifting Warrior & Gulf barges proceeded downstream, and one or more of them collided with and damaged the Hunt Oil Company (Hunt) dock and one or more also ruptured, severed, and separated the Southern Natural Gas Company (SoNat) submarine pipelines Nos. 1 and 4 located downstream of the Hunt dock at RMM 336.9.

Subsequently, the 12 loaded Warrior & Gulf barges all sank, but the 2 empty Parker barges which were broken loose and the 2 empty barges of the TAHOME, which had also broken loose, did not sink and were rescued. At some undetermined time, a Parker barge, the PTC 135, broke loose from her moorings at the Brookwood (Drummond) facility at RMM 354 and drifted into the spillway gates at Holt Dam at 6 a.m. on December 3d. The PTC 135 did not do any damage to the Holt Dam, but her presence prevented the closing of three

spillway gates. On December 3d, Parker abandoned the PTC 135 to the United States.

Approximately 1 week after the PTC 135 drifted into the Holt Dam, the level of Holt Lake was substantially lowered by the Army Corps of Engineers in order to remove the PTC 135. As a result of the lowering of the lake, a Parker barge, the PTC 107, which was moored at Drummond, grounded on the bottom of the lake, fractured in the middle, and was a constructive total loss as a result thereof. The district court found that Parker knew the lake was being lowered to remove the PTC 135 but that Parker did not realize that the PTC 107 would be damaged.

### D. The District Court's Decision

The district court determined that the damages claimed by the appellees all stemmed from the domino effect of the CADDO's tow colliding with the Highway 82 Bypass Bridge and the tow's resulting break-up. The district court concluded that the CADDO casualty was the sole responsibility of the United States. Had this casualty not occurred, the district court found, the various towboat captains in question would not have left their tows unattended. The district court reasoned that leaving their tows unattended under the circumstances that then existed was not negligence on the part of the captains.

In reaching its conclusion, the district court found that the Army Corps of Engineers erred in operating the Holt facility. The district court, relying in part on the Army Corps of Engineers' own records, found that the lock operator at the Holt facility violated the undisputed Army Corps of Engineers' requirements for the operation of the Black Warrior River lock and dam system. The district court determined that this wrongful operation was the proximate cause of the damage sustained by appellees.

For the reasons set forth below, we hold that the district court clearly erred by concluding that the actions of the United States were the proximate cause of the CADDO casualty and, thus, of all the damages suffered by Warrior & Gulf, Parker, Hunt, and SoNat. To the contrary, it was an act of God, in the form of unprecedented rainfall, that proximately caused the domino effect that led to the damages experienced by the parties in this case.

### Analysis

#### A. The Government's Appeal

■ Our review of the district court's finding on the issue of proximate cause is limited to determining whether that finding is clearly erroneous.[4] "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."[5]

The act of God principle "applies only to events in nature so extraordinary that the history of climatic variations and other conditions in the particular locality affords no reasonable warning of them."[6] A party may be deemed negligent yet still be exonerated from liability of the act of God would have produced the same damage irrespective of the party's negligence. In that case, the party's negligence would not be deemed the proximate cause of the injury.[7]

The record clearly establishes, and the district court found, that the excessive rain on the night of December 2d and in the morning of December 3, 1983, was unprecedented. In light of the weather conditions

---

4. *Fireman's Fund Ins. Co. v. M/V Vignes,* 794 F.2d 1552, 1555 (11th Cir.1986) (citing *Marcona Corp. v. Oil Screw Shifty III,* 615 F.2d 206, 208 (5th Cir.1980)).

5. *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948), *quoted in Anderson v. City of Bessemer,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed. 2d 518 (1985).

6. *Bradford v. Stanley,* 355 So.2d 328, 330 (Ala. 1978) (citing *Gulf Red Cedar Co. v. Walker,* 132 Ala. 553, 31 So. 374 (1902).

7. *Glisson v. City of Mobile,* 505 So.2d 315, 319 (Ala.1987).

existing on the night of December 2d and in the morning of the 3d, we must conclude that the district court clearly erred by finding that the Army Corps of Engineers' operation of the lock and dam facilities on the Black Warrior River was the proximate cause of the damages sustained by the parties. The Black Warrior River lock and dam system is not a flood control project; rather, this system is comprised of run-of-the-river facilities. As such, the lock and dam facilities are not designed to accommodate flood waters or to alleviate flooding. The function of run-of-the-river dams simply is to pass downstream all inflow in excess of that necessary to provide the advertised navigational depth in each dam's upper pool. During the critical period, as more water moved down the river as a result of the unprecedented rain, more water was released by the dam, i.e., the flow out of the dam was matching the flow into the lake above the dam. After a thorough review of the record, we are left with the definite and firm conviction that the unprecedented rain, rather than the Army Corps of Engineers' operation of the Black Warrior River lock and dam system, was the inevitable cause of the chain of events in this case.

### B. *Parker's Cross–Appeal*

■ Parker contends it is entitled to recover from the United States that portion of the loss to the PTC 107 caused by the negligence of the United States in lowering Holt Lake, despite Parker's own contributory negligence. Parker contends that the district court erred by denying Parker any recovery for the damage to the PTC 107 caused by the Army Corps of Engineers' negligence because of Parker's contributory negligence. This argument is without merit.

It is well established that comparative fault generally governs recovery in admiralty.[8] However, contrary to Parker's contentions, the district court did not conclude that the Government was contributorily negligent in lowering Holt Lake. Rather, as the district court found, there was advanced warning that Holt Lake was going to be drawn down to facilitate the salvage of the PTC 135.

In addition, Parker seeks remand of this case so that the district court may adjudicate Parker's claims against Warrior & Gulf for damage sustained by the PTC 216 and the PTC 235. Originally, Parker brought a claim against both the United States and Warrior & Gulf for this damage. The district court did not adjudicate Parker's claim against Warrior & Gulf and, instead, determined that the Government was liable to Parker for this damage. In light of our decision on the liability of the United States, we remand this case for further proceedings on Parker's claim against Warrior & Gulf.[9]

### Conclusion

In view of the foregoing, we hold that the district court clearly erred by determining that the actions of the United States were the proximate cause of the damages incurred by appellants on the Warrior River on the night of December 2d and in the morning of December 3, 1983. Accordingly, on this issue, we reverse the district court's judgment. In light of our holding absolving the Government of liability, we remand this proceeding to the district court for further proceedings on Parker's claim against Warrior & Gulf for damages incurred to the PTC 216 and the PTC 235.[10]

### REVERSED AND REMANDED

---

**8.** *See United States v. Reliable Transfer Co.,* 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975).

**9.** The district court's opinion states that "[a]ll parties, save the United States, have settled with Warrior & Gulf." This is not accurate. Parker has not settled its claim against Warrior & Gulf.

**10.** We note that, in the district court, the United States asserted a claim against Parker for salvage costs of the PTC 135. The district court denied that claim on grounds that the damage to the PTC 135 was proximately caused by the negligence of the Government. Although on appeal we reverse the district court's finding of proximate cause, we do not reach the Govern-

ment's claim in light of the Government's choice not to pursue it on appeal.