OPINION OF THE COURT
John S. Lockman, J.
FACTUAL SETTING
In 1978 plaintiff Ronald J. Turcotte was a professional free-lance jockey who had achieved a certain renown by riding the horse “Secretariat” to victories in all three “Triple Crown” races in 1975. On July 13, 1978 he was aboard “Flag of Leyte Gulf” which started from the third pole position in the eighth race at Belmont Park located in Elmont, Nassau County, New York. Entered in the same race was a horse named “Small Raja” ridden by defendant Jeffrey Fell and owned by defendant David P. Reynolds of the Reynolds Metal Company. “Small Raja” started from the second pole position and a horse named “Walter Malone” was in the fourth gate. Some 50 yards from the start defendant Fell is alleged to have so ridden; “his said horse as to cross and weave his said horse into the path of the horse ridden by plaintiff, impeding plaintiff in his path, and further defendant, Jeffrey Fell, caused his horse to jostle and strike the horse ridden by plaintiff without any fault on the part of plaintiff or his horse and without the *878 fault of some other horse or jockey.” Plaintiff contends that defendant Fell’s conduct proximately caused “Flag of Leyte Gulf” to move from the third lane to the fourth where it clipped the heels of “Walter Malone”, stumbled and propelled plaintiff to the ground where he sustained serious physical injuries including paraplegia.
MOTIONS
By separate motions defendants Fell and Reynolds seek summary judgment dismissing the complaint. Defendant Fell contends that while the complaint may be subject to different interpretations the evidence viewed most favorably to plaintiff would support recovery only on a negligence theory. Specifically, he quotes the following from plaintiff’s pretrial deposition:
“Q. So as you sit here today, it is your belief that Jeffrey Fell did not intend to have Small Rajah [sic] make contact with your horse * * * and that the contact was an accident, unintentional, is that correct?
“A. Well, I don’t know how you want to term it. I would term it careless.”
Defendant Fell argues that since professional horse racing is inherently dangerous a jockey’s duty with respect to other jockeys is discharged if he refrains from intentionally causing injury.
background: assumption of the risk
Traditionally injuries sustained by competitors in sporting events have been analyzed in terms of assumption of the risk (Weistart & Lowell, Law of Sports, § 8.02; Comment, 1980 Duke L J 742) and Justice Cardozo’s classic rendering of the policy underlying that “doctrine” is much quoted: “One who takes part in such a sport accepts the dangers that inhere in it so far as they are obvious and necessary, just as a fencer accepts the risk of a thrust by his antagonist or a spectator at a ball game the chance of contact with the ball [citations omitted]. The antics of the clown are not the paces of the cloistered cleric * * * The plaintiff was not seeking a retreat for meditation. Visitors were tumbling about the belt to the merriment of onlookers when he made his choice to join them. He took the chance of a like fate, with whatever damage to his body *879 might ensue from such a fall. The timorous may stay at home.’’(Murphy v Steeplechase Amusement Co., 250 NY 479, 482-483.) In 1975, however, the New York Legislature enacted CPLR 1411 which provides in pertinent part: “In any action to recover damages for personal injury * * * the culpable conduct attributable to the claimant * * * including contributory negligence or assumption of the risk, shall not bar recovery, but the amount of damages otherwise recoverable shall be diminished in the proportion which the culpable conduct attributable to the claimant or decedent bears to the culpable conduct which caused the damages.” In commenting on this legislation, then Professor, now Judge, Joseph McLaughlin, said: “It is interesting (and edifying) that the new statute treats contributory negligence and assumption of the risk interchangeably. The writer has never clearly understood the difference between the two doctrines, and it is well that the statute handles both defenses identically.” (Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C1411:l, p 386.) The lack of precision or clearly defined meaning in referring to the “Assumption of the Risk Doctrine” has been criticized through the years. (James, Assumption of Risk: Unhappy Reincarnation, 78 Yale L J 185; Wade, The Place of Assumption of Risk in the Law of Negligence, 22 La L Rev 5.) Unfortunately by using this criticized term in the statute its ambiguity was also incorporated.
ASSUMPTION OF THE RISK AFTER CPLR 1411
As illustrative of assumption of the risk, Justice Cardozo cited the fencer’s acceptance of risk of injury from his opponent’s thrust and the spectator’s acceptance of the risk of injury from being struck by a batted ball. A possible effect of CPLR 1411 might have been that both the plaintiff fencer and the plaintiff spectator would be entitled to have a jury assess the reasonableness of their conduct should they be injured by the thrust or the batted ball. (See Akins v Glens Falls City School Dist., 53 NY2d 325, 333 [dissenting opn by Cooke, Ch. J.].) However, in Akins v Glens Falls City School Dist. (supra, p 327), the Court of Appeals ruled that CPLR 1411 had no application because: “This case does not involve the ‘culpable conduct’ (CPLR 1411) — be it *880 assumption of risk or contributory negligence — of a spectator injured in the course of a baseball game.” Rather, the court found that by addressing first the nature of the duty owed the plaintiff by the defendant and next whether such duty was breached (supra, p 333; Prosser, Torts [4th ed], § 30, p 143), it could be determined as a matter of law that the defendant had discharged its duty by fencing the section behind home plate where foul balls were most likely to occur.
In drawing the distinction between the issue of the duty of care owed by the defendant to the plaintiff and the issue of the plaintiff’s own culpable conduct the Court of Appeals echoed many authorities in the field of tort law. “[T]he doctrine [of assumption of the risk] deserves no separate existence (except for express assumption of risk) and is simply a confusing way of stating certain no-duty rules or, where there has been a breach of duty toward plaintiff, simply one kind of contributory negligence.” (James, Assumption of Risk: Unhappy Reincarnation, 78 Yale L J 185, 187-188; Wade, The Place of Assumption of Risk in the Law of Negligence, 22 La L Rev 10.) While the authorities differ in the degree of precision with which the subcategories of assumption of risk may be distinguished, they appear unanimous in differentiating between the risk which the plaintiff reasonably encounters because the benefits to be derived outweigh the danger and the risk which the plaintiff unreasonably encounters because the reward is of insufficient magnitude. (See 2 Harper & James, Torts, p 1162; Prosser, Torts [4th ed], § 68, pp 440-441; Restatement, Torts 2d, §§ 496A-496D.) The former plaintiff relieves the defendant of his duty of care toward the plaintiff with respect to the perceived risk which the plaintiff reasonably encounters because of the benefit to be derived. As to the latter plaintiff, the defendant may have breached his duty of care, but the common law relieved defendant of the consequences of that breach because of the plaintiff’s own negligence in unreasonably encountering a risk because the benefit to be derived was not of sufficient magnitude.
Akins v Glens Falls City School Dist. (supra), appears to hold that CPLR 1411 applies only to the latter plaintiff who has been guilty of “culpable conduct” in encountering *881 the risk. The baseball spectator who chooses to sit in an unprotected section acts reasonably in exposing himself to the risk of being struck by a batted ball because the risk is sufficiently slight that it is outweighed by the advantage of an unobstructed view. The legal effect of the spectator’s choice is to relieve the ball park proprietor of the duty of protecting the spectator from foul balls except for those seated behind home plate where the risk is so great that it is not outweighed.
APPLICATION OF AKINS ANALYSIS
Having observed the Court of Appeals handling of the spectator struck by the batted ball in the post-CPLR 1411 context, this court must now apply the same principles to the fencer injured by his adversary’s thrust or, in our case, the injured professional jockey. No reported case has yet applied Akins v Glens Falls City School Dist. (supra) to an injury to a sports participant, but the treatment of such injuries under the assumption of risk analysis is somewhat helpful.
In McGee v Board of Educ. (16 AD2d 99) the First Department confronted a plaintiff injured by an errant throw while coaching a student baseball team. While dismissing the complaint it said: “Generally, the participants in an athletic event are held to have assumed the risks of injury normally associated with the sport [citations omitted]. Players, coaches, managers, referees and others who, in one way or another, voluntarily participate must accept the risks to which their roles expose them. Of course, this is not to say that actionable negligence can never be committed on a playing field. Considering the skill of the players, the rules and nature of the particular game, and risks which normally attend it, a participant’s conduct may amount to such careless disregard for the safety of others as to create risks not fairly assumed. But it is nevertheless true that what the scorekeeper may record as an ‘error’ is not the equivalent, in law, of negligence.” (Supra, at pp 101-102.) The court accepted without question the reasonableness of the participant’s decision to engage in the sport implicitly determining that such decision was in no way negligent or culpable. Certainly, it would be hard to justify a finding that a person who engages in well-known sports *882 activity, even one with inherent danger, is being negligent. It has been suggested that insofar as the decision to encounter such known risks is concerned the standard against which the participant’s conduct is measured is subjected and limited only to inquiring whether the participant knew, understood and appreciated the danger. (Restatement, Torts 2d, § 496A, p 562.) Such analysis lends further substance to the contention of some authorities that the appropriate heading for evaluating such a voluntary encountering of known dangers is “Consent” rather than “Assumption of Risk”. (See Wade, The Place of Assumption of Risk in the Law of Negligence, op. cit., p 8; Prosser, Torts [4th ed], § 68, p 440; Ross v Clouser, 637 SW2d 11, 14, en banc [Mo.].) In any event, this court concludes that, particularly when confronted by a regulated sport like thoroughbred racing (see Racing, PariMutuel Wagering and Breeding Law) it cannot be said that the decision to be a participant is in any way negligent or culpable. However, in making such a decision the participant does relieve others involved in the sport from any duty of care with respect to known dangers or risks which inhere in the activity, but not of the duty to refrain from causing injury through wanton, reckless or intentional conduct. (See Liability of Participant in Team Athletics, Ann., 77 ALR3d 1300; cf. Hackbart v Cincinnati Bengals, 601 F2d 516.)
In Santiago v Clark (444 F Supp 1077) the facts were quite similar to those before this court. Plaintiff, a professional jockey, alleged that he was caused to sustain injury by the negligence of the defendant Clark, also a professional jockey, whose horse cut off plaintiff’s horse during a race. In finding that plaintiff had assumed the risk, the court said (p 1079): “Thoroughbred horse racing, by its own nature, is a sport posing great peril to its participants. Up to a dozen horses, each weighing 1000 to 1200 pounds break from a starting point and attempt to gain a preferred position on the rail as the first turn is approached. Astride these horses moving at full speed are persons weighing in the neighborhood of 100 pounds who jockey their mounts for position. In this dash for position, due to both jockey error and to the difficulties in controlling a Thoroughbred *883 horse, contacts and collisions are commonplace, occasionally resulting in spills with resultant injuries. These dangers are inherent in the sport of Thoroughbred horse racing, and well known to a jockey who had been riding professionally for seven years.” While the court found that the plaintiff had assumed the risk, it did not indicate that he was unreasonable or negligent in doing so. Indeed, the professional jockey’s conduct in engaging in his chosen profession would appear no more culpable than that of the baseball spectator sitting in an unprotected seat. The evidence submitted on this motion indicates that the financial rewards available to professional jockeys, particularly those who have achieved the status plaintiff had achieved in July of 1978, were great indeed. The risks were also great. Defendants submitted evidence that in the last 42 years 115 jockeys have been killed in horse races and others have been injured and maimed.
Plaintiff was an experienced, professional jockey, who in 1978 was certainly aware of the inherent dangers of his sport. By participating in it he relieved his fellow participants of their duty of care at least with respect to those dangers normally associated with the sport. He did not, however, relieve them of the duty to refrain from reckless, wanton or intentionally injurious conduct.
CONCLUSION
Under the Akins v Glens Falls City School Dist. (53 NY2d 325, supra) approach the first issue which must be addressed is the nature of the duty owed by defendant Fell to plaintiff. It is not alleged, nor can it be said, that plaintiff himself was negligent, careless or in any way culpable for engaging in his chosen profession. Thus, CPLR 1411 is no more applicable here than with regard to the spectator sitting in an unprotected seat at a baseball game.
However, by engaging in a professional sport with certain known and inherent risks of injury plaintiff implicitly consents to relieve others from any duty to protect him from such risks. Given the never precise meaning of “Assumption of Risk”, theoretically at one time this relieving others of their duty of care might have been called “Assumption of Risk”. However, insofar as a plaintiff acts *884 reasonably in incurring such risks because of the benefits to be derived, his conduct is not culpable and remains unaffected by CPLR 1411.
Here, by engaging in the activities of a professional thoroughbred jockey, plaintiff reasonably consented to expose himself to certain risks in return for potential and substantial rewards. In so doing he relieved the other jockeys, including defendant Fell, of any duty of care with respect to the known and apparent risks of horse racing, but he did not relieve them of their duty to refrain from reckless, wanton or intentional infliction of injury.
The complaint does not allege, and there is no evidence before this court of wantonness, recklessness or intentional infliction of injury on the part of defendant Fell. Of course, plaintiff had no reason to necessarily anticipate this court’s application of Akins (supra). Accordingly, while the court finds itself constrained to grant defendant Fell’s motion for summary judgment, plaintiff may serve an amended complaint.
Having found that the complaint must be dismissed against defendant Fell, the complaint against defendant Reynolds which rests upon a respondeat superior theory must also fall.