Paul and Leslie MANNING, Plaintiffs,

v.

Martin GORDON, Jack Air, Mac Cranford, and the S/V NEVER AGAIN II, Yacht # 75 its apparel, sails and appurtenances, Defendants.

No. C 93–3426 WHO (ARB).

United States District Court,
N.D. California.

May 16, 1994.

Cory A. Birnberg, Birnberg & Associates, San Francisco, CA, for plaintiffs.

Daniel J. Crawford, Hancock Rothert & Bunshoft, San Francisco, CA, for defendants.

## OPINION AND ORDER

ORRICK, District Judge.

In this action involving a collision between two yachts in the course of a sailboat race, the Court is met with the threshold question as to whether the doctrine of assumption of risk may be applied to a case arising under the General Maritime Law of the United States. The question, one of first impression

in this district and circuit, comes before the Court on plaintiffs' Rule 12(e) Fed.R.Civ.P.[1] motion to strike the defendants' eighth, ninth and tenth affirmative defenses of assumption of risk. For the reasons stated hereinafter and in the course of oral argument, the motion is GRANTED.

### I.

On April 17, 1993, the sailboat *Xarifa,* skippered and owned by the plaintiff, Paul Manning, took part in a race in the San Francisco Bay waters. The race was sponsored by the Yacht Racing Association of San Francisco Bay ("YRA") and the U.S. Sailing Association ("U.S. Sailing"). During the race, the *Xarifa* collided with another sailboat, *the Never Again II,* owned and skippered by defendant Martin Gordon.[2] The collision occurred as the two boats were rounding one of the course marks. The *Xarifa* protested the collision, and a protest committee of the Corinthian Yacht Club, convened after the race, disqualified the *Never Again II* from the race for violation of the International Yacht Racing Rules ("IYRR"). Damage to the boat, including lost wages of the owner in dealing with the repair process, totalled approximately $25,000.[3]

### II.

#### A.

Preliminarily it should be noted, as the Fourth Circuit has held, that "[t]he tenets of admiralty law, which are expressly designed to promote uniformity, *do not permit assumption of risk in cases of personal injury whether in commercial or recreational situations.* Indeed, admiralty law has been credited as giving birth to the idea of comparative negligence." *De Sole v. United States,* 947 F.2d 1169, 1174–75 (4th Cir.1991) (emphasis added). And so it is a matter of common knowledge that there is no assumption of risk defense in the context of a Jones Act

---

1. Rule 12(f) of the Federal Rules of Civil Procedure provides that a party may move to strike any "insufficient defense or any redundant, immaterial, impertinent or scandalous matter."

2. The Never Again II is also owned by defendants Martin Gordon, Jack Air and Mac Cranford.

3. Plaintiffs have also requested punitive damages.

seaman's injury, *Socony–Vacuum Oil Co. v. Smith,* 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265 (1939) or in the context of a recreational boating accident involving personal injury. *Skidmore v. Grueninger,* 506 F.2d 716 (5th Cir.1975). Furthermore, in *United States v. Reliable Transfer,* 421 U.S. 397, 411, 95 S.Ct. 1708, 1715–1716, 44 L.Ed.2d 251 (1975), the Supreme Court barred the doctrine in admiralty cases involving commercial collisions, stating:

> We hold that when two or more parties have contributed by their fault to cause property damage in a maritime collision or stranding, liability for such damages is to be allocated among the parties proportionately to the comparative degree of their fault, and that liability for such damages is to be allocated equally only when the parties are equally at fault or when it is not possible to fairly measure the comparative degree of their fault.

421 U.S. at 411, 95 S.Ct. at 1715–16.

The question here is whether sailboat racing ·is an exception to the generally applicable rule barring assumption of risk as a defense in admiralty actions.[4]

The applicable case law is sparse. There are only three reported cases, two from the federal district courts and one from the court of appeals, that deal with the application of assumption of risk to boat racing collisions.

The earliest reported case discussing this issue is *Dunion v. Kaiser,* 124 F.Supp. 41 (E.D.Pa.1954). *Dunion* involved a collision between two motor boats racing in New Jersey. The defendant's boat failed to make a tight turn and struck the plaintiff's boat, causing major damage to plaintiff's motor boat. The plaintiff brought suit in admiralty to recover damages. The court held that

plaintiff's recovery was barred by the assumption of risk, stating:

> Libellant, having chosen to enter his boat in a racing event in which he knew it would encounter high speed maneuvers and close proximity to other craft operating in rough and confused waters must be left to bear the loss that has resulted. He will not be heard to say that he should recover because other drivers were less skillful than his or that other boats were groomed to a lesser degree of perfection ... these facts are precisely what he hoped to demonstrate by having his boat the first to cross the finish line.

*Id.* at 44–45.

The second case to deal with this question is the district court case of *De Sole v. United States of America,* 1989 A.M.C. 2739, 1989 WL 201607 (D.Md.1989), *rev'd, De Sole v. United States of America,* 947 F.2d 1169 (4th Cir.1991). In the district court *De Sole* case, the plaintiff filed an action in admiralty seeking to recover for damage done to his racing yacht, the *Ciro,* suffered in a collision with a U.S. Naval Academy yacht, the *Cinnabar.* The collision occurred during a sailboat race in Chesapeake Bay. The Navy moved to dismiss the action, contending that any recovery was barred by the doctrine of assumption of risk. The district court agreed with the Navy's contention, and dismissed the action based on assumption of risk. The court relied primarily on the *Dunion* case, discussed above, and on various state cases in which various courts held that a plaintiff's knowledge of risks involved in a sporting event barred recovery.[5]

The district court's decision in *De Sole* was reversed by the Fourth Circuit, 947 F.2d 1169, stating, albeit in *dicta,* that "[i]f, indeed, we are obliged to decide flat out wheth-

---

4. The U.S. Sailing Association filed an amicus brief opposing the application of the doctrine of assumption of risk to yacht racing, on the grounds that sailing associations have very strict rules to avoid collisions, and assumption of risk will convert the sport to a "no fault" enterprise and thereby undermine respect for the rules. The Sailing Association also contends that "one of our longest standing and most important traditions is that the competitor at fault in a racing collision pays for the damage caused to the other party." (U.S. Sailing Brief at 12–13.)

5. The court expressly discussed *Turcotte v. Fell,* 123 Misc.2d 877, 474 N.Y.S.2d 893 (Sup.Ct. 1984), in which a New York state court barred recovery by a jockey who suffered severe injuries as a result of a fall in a horse race. The court also cited cases involving injuries suffered during participation in baseball, basketball, tennis, automobile racing, and golf.

er assumption of risk applies to a yachting race on the high seas ... the majority would be disposed to hold that there is ordinarily no assumption of risk doctrine applicable to collisions between contestants in a maritime race of the nature here presented." 947 F.2d at 1174.[6]

Furthermore, the court stressed the need for uniformity in admiralty law:

> Neither we, the parties, nor the *amici curiae* have been able to find any case, other than *Dunion*, that injects the doctrine of assumption of risk into admiralty law. That body of law is marked by a need for uniform rules. The law of the several states regarding whether, and if so to what extent, assumption of this risk is to apply is far from uniform. As the Supreme Court recently stated: "The need for uniform rules of maritime conduct *and liability* is not limited to navigation, but extends at least to any other activities traditionally undertaken by vessels, commercial or *noncommercial.*" *Sisson v. Ruby,* [497 U.S. 358] 110 S.Ct. 2892 [111 L.Ed.2d 292] (1990) (emphasis added).

*Id.* at 1178 n. 14. The court then concluded that "[c]onfronted neither by history nor state majority, we perceive no compelling reason to find that assumption of risk is, in general, a defense to admiralty cases involving competitive racing." *Id.* at 1177.

To sum up the case law: there is one 1954 case, *Dunion,* that has applied the doctrine of assumption of risk in admiralty (but *Dunion* was criticized by the majority in *De Sole* ).[7] The more recent district court case of *De Sole* was reversed by the Fourth Circuit, as the majority reversed the district court's dismissal on the grounds of assumption of risk and concluded, *in dicta,* that assumption of risk is *not* ordinarily applicable in the maritime racing context.

**B.**

Defendants find it "instructive" that a number of state courts, including the California Supreme Court and the California Court of Appeals, have applied the doctrine of assumption of risk to bar participants in sports (e.g. football, basketball, baseball, hockey, golf, horse racing, water skiing and yacht racing) from recovery for negligence. In *Ford v. Gouin,* 3 Cal.4th 339, 11 Cal.Rptr.2d 30, 834 P.2d 724 (1992), the California Supreme Court ruled that the plaintiff, a barefoot waterskier, was barred from bringing an action against the driver of the boat because of the doctrine of reasonable implied assumption of risk. The California Supreme Court affirmed the trial court's finding that the driver of the boat, as a co-participant, did not owe the plaintiff any duty other than to avoid grossly negligent and/or intentional conduct.

In *Stimson v. Carlson,* 14 Cal.Rptr.2d 670, 11 Cal.App.4th 1201 (1st Dist.1992), a crewmember on a yacht involved in a sailboat race on San Francisco Bay sued the captain and owner for personal injuries resulting from the captain's alleged negligence in allowing an accidental jibe. The court affirmed the trial court's grant of summary judgment on the grounds of assumption of risk, concluding that participants in an active sport have no duty to protect other participants from risks inherent in the sport, but are only liable for reckless or intentional conduct "totally outside the range of the ordinary activity involved in an active sport." 14 Cal.Rptr.2d at 672–73.

Notwithstanding the pronouncements of the California courts, no federal court has endorsed the application of the doctrine of assumption of risk to yacht racing, and there is no compelling reason to *extend* the doctrine of assumption of risk to yacht racing.[8]

---

6. The court reserved decision on the issue of whether the doctrine of assumption of risk applies in admiralty: "Whether and, if so, under what circumstances assumption of risk applies in admiralty we again emphasize that we do not, in the present posture of the case, reach." 947 F.2d at 1178.

7. The *De Sole* court noted that "[t]he admiralty authorities that the *Dunion* court relied upon,

cases involving collisions between commercial vessels, have long since been overruled by the Supreme Court in *United States v. Reliable Transfer Co., Inc.,* 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975)." 947 F.2d at 1172 n. 2.

8. Defendants have raised the specter of a flood of yacht racing related lawsuits should the Court decline their invitation to apply the doctrine of assumption of risk to yacht racing. The Court's

Any policies that might mandate in favor of the application of the doctrine of assumption of risk to yacht racing are far outweighed by the necessity of preserving uniformity in admiralty law. *See De Sole,* 947 F.2d at 1177, 1178 n. 14.

### C.

Returning to the task at hand, namely, whether without benefit of Ninth Circuit case law the Court should hold that the doctrine of assumption of risk should be applied to the General Maritime Law of the United States in cases involving sailboat races as an exception to the general rule, the Court holds it should not. Therefore, as a matter of law, the Court rules that the defense of assumption of risk is an invalid defense under the General Maritime Law of the United States.

Accordingly,

**IT IS HEREBY ORDERED** that:

1. Defendants' eighth, ninth and tenth affirmative defenses as to assumption of risk are stricken pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.

research has failed to turn up evidence of this flotilla of yacht racing cases.