Wheatley, PJ.
This is an appeal from the allowance of the defendant’s motion for summary judgment. The motion judge ruled that the plaintiffs allegation of negligence was not enough to charge the plaintiff with liability in this situation, that the higher standard of care of reckless misconduct applies. The plaintiff filed this Dist./Mun. Cts. R. A. D. A., Rule 8A, expedited appeal upon an agreed statement of facts. We reverse the lower court decision and deny defendant’s motion for summary judgment.
The controversy centers around the activity between two participants in a sailboat race in Mattapoisett harbor on July 16,1997. At the time of the accident, both boats were traveling near each other on a starboard tack,[1] the defendant’s boat being windward of the plaintiffs. The defendant’s boat struck the starboard (the right) side of the plaintiffs boat, causing it damage in the approximate amount of $3,500 and putting it out of commission for the sailing season. Citing the defendant’s negligence, the plaintiff brought suit to recover for the damage. The defendant answered denying liability. On the defendant’s motion for summary judgment, the motion judge ruled that"... the standard of care participants in such *306 an event owe each other is to refrain from ‘reckless misconduct’” and allowed the motion.
At issue is the applicable standard of care between the participants in a sailing race in Federal Inland waters off the Massachusetts shore, and whether we should be guided by admiralty law or Massachusetts law. The Supremacy Clause of the United States Constitution, Art. VI, says, in part: "... [T]he Laws of the United States which shall be made in Pursuance [of the Constitution] ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the ... Laws of any State to the Contrary notwithstanding.” “If ‘the nature of the regulated subject matter permits no other conclusion, or... Congress has unmistakably so ordained,’ federal preemption of state law is mandated under the Supremacy Clause.” Ibid, at 16. See Palumbo v. Boston Tow Boat Co., Inc., 21 Mass. App. Ct. 414 (1986).
On the other hand, “[o]ut of respect for the distinct spheres of authority inherent in our federal system, preemption of state laws is generally disfavored.” (Cases omitted) McCoy v. Massachusetts Institute of Technology, 950 F.2d 13, 16 (1st Cir. 1991), cert. denied, 504 U.S. 910 (1992). ‘There are several theories under which [State law] may be preempted by Federal law.” Attorney General v. Brown, 400 Mass. 826, 828 (1987). There may be an express or inferred preemption, or actual conflict with state law. Preemption is not to be lightly presumed. California Fed. Sav. & Loan Ass’n v. Guerra, 479 U.S. 272, 281 (1987). Nevertheless, even though federal power is less likely to be intended in areas of local, rather than national, importance, state law may not be applied in maritime cases if “it contravenes the essential purpose expressed by an act of Congress or works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of’that law in its international and interstate relations.” Southern Pacific Co. v. Jensen, 244 U.S. 205, 216 (1917), quoted in Morris v. Massachusetts Maritime Academy, 409 Mass. 179, 181, 565 N.E.2d 422 (1991). See also Militello v. Ann & Grace, Inc., 411 Mass. 22 (1991).
The applicable federal case law concerning the apportionment of liability between those involved in racing boat collisions is sparse. There are only four reported cases, three from the federal district courts and one from the court of appeals, that deal with racing boat collisions and the issue of the application of the theory of assumption of the risk. In the case at bar, because the theory of assumption of the risk has been abolished in Massachusetts, the trial judge based her decision concerning the scope of duty on a choice between negligence and reckless conduct, essentially the same issue as to whether or not assumption of the risk would apply.[2] G.L.c. 231, §85.
The first case, Dunion v. Kaiser, 124 F. Supp. 41 (E.D. Pa. 1954), involved a collision between two motor boats racing in New Jersey. In this suit in admiralty, the court held that plaintiffs claim was barred by the assumption of the risk. Later, however, this case was rejected because that court relied on cases involving collisions between commercial vessels, long since overruled by the Supreme Court in United States v. Reliable Transfer Co., Inc., 421 U.S. 397, 95 S. Ct. 1708, 44 L. Ed. 2d 251 (1975).
In 1991, the Fourth Circuit Court of Appeals, in a carefully-reasoned opinion, dealt with a collision between a racing yacht and a United States Navy yacht in the Annapolis, area. De Sole v. United States, 947 F.2d 1169 (4th Cir. 1991) (Widener, J., *307 dissenting). The lower court, under Fed. R. Civ. P. 12 (b) (6), had dismissed DeSole’s negligence claim, on the basis that DeSole had assumed the risk of damage, and therefore did not state a claim upon which relief could be granted. Acknowledging that admiralty employs a system of comparative fault, the government urged the application of assumption of the risk in this sporting event. Id,., at 1172. The court considered the RESTATEMENT (SECOND) OF TORTS §50 comment b (1969), which says,
Taldng part in a game manifests a willingness to submit to such bodily contacts or restrictions of liberty as are permitted by its rules or usages. Participating in such a game does not manifest consent to contacts which are prohibited by rules or usages of the game if such rules or usages are designed to protect the participants and not merely to secure the better playing of the game as a test of skill.
and found that the sailing rules concern participant protection and not increased sports proficiency. Id., at 1172-3.[3] They declined to hold that assumption of the risk applied to the facts of the case, and remanded it to the district court for further hearings. In the course of their opinion, as dicta, they wrote, “If... we are obliged to decide flat out whether assumption of the risk applies to a yachting race on the high seas ..., the majority would be disposed to hold that there is ordinarily no assumption of risk doctrine applicable to collisions between contestants in a maritime race of the nature here presented.” Id., at 1174. They went on to state that there is a possibility that in some situation, such as a sailor assuming the risk by signing a document before the race, assumption of the risk could apply. But that that possibility exists, is not enough to “justify a court-adopted blanket rule that all sailors in all racing circumstances [are] barred from suing in negligence for collision damages.” Ibid. ‘The tenets of admiralty law, which are expressly designed to promote uniformity, do not permit assumption of risk in cases of personal injury whether in commercial or recreational situations. Indeed, admiralty law has been credited as giving birth to the idea of comparative negligence.... Comparative negligence has become the preferred standard.” Ibid. “Confronted neither by history nor state majority, we perceive no compelling reason to find that assumption of risk is, in general, a defense to admiralty cases involving competitive racing.” Id., at 1176. However, they concluded, “[w]hether and, if so, under what circumstances assumption of the risk applies in admiralty we again emphasize that we do not, in the present posture of the case, reach.” Id., at 1178. See Calabro v. Outboard Marine Corp., 599 So. 2d 717 (Fla. App. 3 Dist. 1992).
In 1994, the U.S. District Court, N.D. California, wrote of a sailing race collision in San Francisco Bay waters. Manning v. Gordon, 853 F. Supp. 1187 (N.D. Cal. 1994). In their examination of prior applicable law, the court noted, “... it is a matter of common knowledge that there is no assumption of the risk defense in the context of a Jones Act seaman’s injury... or in the context of a recreational boating accident involving personal injury.” Id., at 1188-9. In their analysis, they examined Dunion and De Sole and two California state cases that applied assumption of the risk. They quoted a basic proposition from De Sole:
Neither we, the parties nor the amici curiae have been able to find any case, other than Dunion, that injects the doctrine of assumption of risk *308 into admiralty law. That body of law is marked by a need for uniform rules. The law of the several states regarding whether, and if so to what extent, assumption of this risk is to apply is far from uniform. As the Supreme Court recently stated: The need for uniform rules of maritime conduct and liability is not limited to navigation, but extends at least to any other activities traditionally undertaken by vessels, commercial or noncommercial.’ Sisson v. Ruby, 497 U.S. 358, 110 S. Ct. 2892, 111 L. Ed. 2d 292 (1990). Id., at 1189.
They concluded that, “[notwithstanding the pronouncements of the California courts, no federal court has endorsed the application of the doctrine of assumption of risk to yacht racing, and there is no compelling reason to extend the doctrine of assumption of risk to yacht racing. Any policies that might mandate in favor of the application of the doctrine of assumption of risk to yacht racing are far outweighed by the necessity of preserving uniformity in admiralty law.... Therefore, as a matter of law, the Court rules that the defense of assumption of risk is an invalid defense under the General Maritime Law of the United States.” Id., at 1189-90.
Later that year, the U.S. District Court, S.D. California, visited the same issue involving a collision of two sailing racing vessels in San Diego bay. Whalen v. BMW of North America, Inc., 864 F. Supp. 131 (S.D. Cal. 1994). The facts there differed substantially, however, in that the plaintiff had, prior to the race, allegedly signed a document wherein he expressly assumed the risk of injury. The court denied defendant’s motion for summary judgment and left the question of assumption of the risk for the jury.
Concluding from the above, as we do, that the defense of assumption of the risk is not available as a defense in this case, we vacate the lower court’s ruling on defendant’s motion for summary judgment, deny the motion and send the case back to the lower court for further proceedings.
So ordered.

 That is, the boats were traveling across the wind, which was coming over their starboard (right) bow. The defendant’s boat was windward (upwind) of the plaintiffs. In this pattern, under the applicable rules of the road of navigation, the plaintiffs boat was the “privileged” vessel, and had the right of way, and the defendant’s boat was the “burdened” vessel.

 ‘The doctrine of assumption of risk ... is in most of its aspects a defendant’s doctrine that restricts liability and so cuts down the compensation of accident victims. ... [It is] purely duplicative of other more widely understood concepts, such as scope of duty. ... It adds nothing to the modem law except confusion.” 4 HARPER, JAMES & GRAY, LAW OF TORTS (2d ed. 1986) §21.8, at 259-60.

 Because there is no reference in the facts in the case at bar to any specific governing rules of sailing, and this is an expedited appeal upon an agreed statement of facts, we do not consider any effect that the possible acceptance of any rules by virtue of participation in the race would have on our decision. Dist./Mun. Cts. R. A. D. A., Rule 8A(8).